COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Coleman and Senior Judge Cole
Argued at Richmond, Virginia


CURTIS S. SNIDER
                                              OPINION BY
v.  Record No. 0833-97-2            JUDGE JAMES W. BENTON, JR.
                                            MARCH 3, 1998
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF AMELIA COUNTY
                   Thomas V. Warren, Judge

        Jonathan S. David (Joseph D. Morrissey;
        Morrissey, Hershner & Jacobs, on brief), for
        appellant.

        Daniel J. Munroe, Assistant Attorney General
        (Richard Cullen, Attorney General, on brief),
        for appellee.


     Curtis S. Snider was convicted in a bench trial of operating

a motor vehicle upon a public highway while under the influence

of alcohol, in violation of Code § 18.2-266.  He contends the

trial judge erred by admitting into evidence the blood alcohol

analysis because the procedure for extracting his blood did not

substantially comply with statutory requirements.  Snider also

contends the evidence was insufficient to convict him of the

crime.  We disagree and affirm his conviction.

     The evidence at trial proved that when State Trooper Olinger

arrived to investigate a one-vehicle accident in Amelia County,

Snider had walked away.  When Snider returned to his vehicle, he

told Trooper Olinger that he slid off the road while turning to

avoid several deer.  Trooper Olinger noticed that Snider's eyes

were bloodshot and glassy and that his body had an odor of

alcohol.  Although Trooper Olinger noticed that Snider's speech was slurred, she testified that Snider's speech could have been affected by an injury to his lip.  Trooper Olinger testified that Snider denied consuming any alcohol after the accident and admitted that he consumed four beers before the accident.  He said he consumed the last beer one-half hour before the accident.

Trooper Olinger arrested Snider and transported him to have a blood test performed.  Trooper Olinger was present when a nurse withdrew Snider's blood for the test.  When the Commonwealth offered as evidence the certificate of analysis of Snider's blood, Snider's defense counsel objected to its admission because Trooper Olinger did not know whether the nurse cleansed Snider's arm before extracting blood.  The trial judge overruled the objection and admitted the certificate of analysis, which indicated that Snider's blood had an alcohol content of .10 by weight by volume.

In his defense, Snider testified that his car went into a ditch after he swerved to avoid several deer.  When no one passed after twenty minutes, he retrieved a pack of six beers from his vehicle and began to walk.  During a two-mile walk, he drank four or five beers.  When asked if he remembered Trooper Olinger questioning him about drinking after the accident, Snider testified, "she asked me, but I can't remember the before or after . . . .  I said that I had been drinking."

The trial judge convicted Snider of driving under the

influence of alcohol in violation of Code § 18.2-266.

### Admissibility of Blood Test Results

In pertinent part, the implied consent statute provides as follows:

> For purposes of this article, only a physician, registered professional nurse, graduate laboratory technician or a technician or nurse designated by order of a circuit court acting upon the recommendation of a licensed physician, using soap and water, polyvinylpyrrolidone iodine or benzalkonium chloride to cleanse the part of the body from which the blood is taken and using instruments sterilized by the accepted steam sterilizer or some other sterilizer which will not affect the accuracy of the test, or using chemically clean sterile disposable syringes, shall withdraw blood for the purpose of determining its alcohol or drug or both alcohol and drug content.

Code § 18.2-268.5. The legislature has clearly indicated in the following statutory language that strict compliance with some parts of the implied consent law will not be required:

> The steps set forth in [Code] §§ 18.2-268.2 through 18.2-268.9 relating to taking, handling, identifying, and disposing of blood or breath samples are procedural and not substantive. Substantial compliance shall be sufficient. Failure to comply with any steps or portions thereof, . . . shall go to the weight of the evidence and shall be considered with all the evidence in the case; however, the defendant shall have the right to introduce evidence on his own behalf to show noncompliance with the aforesaid procedures or any part thereof, and that as a result his rights were prejudiced.

Code § 18.2-268.11 (emphasis added). See Artis v. City of Suffolk, 19 Va. App. 168, 171, 450 S.E.2d 165, 167 (1994)

- 3 -

(holding that "where there is substantial compliance, any deficiency in the required procedures is a matter of weight and sufficiency of the evidence to be determined by the trier of fact"). The burden is on the Commonwealth to show that it substantially complied with the requirements of the statute. See Kemp v. Commonwealth, 16 Va. App. 360, 365, 429 S.E.2d 875, 878 (1993).

Snider argues that the Commonwealth did not meet its burden of proving substantial compliance with Code § 18.2-268.5 because the evidence did not establish what, if any, solution was used to cleanse Snider's arm before the blood was withdrawn. Snider relies on Hudson v. Commonwealth, 21 Va. App. 184, 462 S.E.2d 913 (1995), where this Court held that using benadine to cleanse the driver's arm before a blood test did not constitute substantial compliance with Code § 18.2-268.5 because no evidence of benadine's chemical properties was presented at trial. Id. at 186, 462 S.E.2d at 914. Snider argues that the circumstances here are more egregious than in Hudson because either an unknown solution or no solution was used on his arm.

In another context, the Supreme Court of Virginia has ruled that, in determining the question of substantial compliance, "a minor, trivial difference can be tolerated whereas a material difference cannot." Akers v. James T. Barnes of Washington, D.C., Inc., 227 Va. 367, 370, 315 S.E.2d 199, 201 (1984). "The principle of substantial compliance, which is predicated upon a

- 4 -

failure of strict compliance with applicable requirements, operates to replace the protective safeguards of specificity with a less exacting standard of elasticity, in order to achieve a beneficial and pragmatic result."  Coleman v. Pross, 219 Va. 143, 158, 246 S.E.2d 613, 622 (1978).  We believe these general standards can be applied to the requirement of the implied consent law, where the mischief to be avoided is contamination of the blood that is being extracted for the blood alcohol test.  In Hudson, the evidence proved that the area from which the blood sample was extracted was, in fact, contaminated by benadine, a solution whose chemical properties were not proved.  The evidence in this record proved that, although Trooper Olinger watched the nurse extract blood from Snider's arm, Trooper Olinger could not recall whether the nurse used a solution to prepare Snider's arm. Thus, unlike Hudson, the evidence in this case leaves uncertain whether any solution was used to cleanse Snider's arm before the blood test.

The evidence proved that a properly designated nurse took the sample.  See Code § 18.2-268.5; Brooks v. City of Newport News, 224 Va. 311, 315, 295 S.E.2d 801, 803 (1982) (holding that the qualifications of the person who performs the test "is a matter of substance, not procedure").  Because the evidence did not establish whether a solution was used to prepare Snider's arm for the blood extraction, we can only speculate that contamination could have occurred.  No evidence in the record

proved that the nurse's failure to cleanse Snider's arm caused a contamination which affected the accuracy of the test. See Shumate v. Commonwealth, 207 Va. 877, 881-83, 153 S.E.2d 243, 247 (1967) (holding that substantial compliance existed even where "it was not shown who took the blood [and] whether soap and water were used to cleanse the place at which the blood was taken").

In other circumstances, we have ruled that "[w]here there is mere speculation that contamination . . . could have occurred, it is not an abuse of discretion to admit the evidence and let what doubt there may be go to the weight to be given the evidence." Reedy v. Commonwealth, 9 Va. App. 386, 391, 388 S.E.2d 650, 652 (1990). In view of the statutory mandate that substantial compliance suffices to establish the procedural steps of taking the blood, we conclude that the failure to prove whether a solution was used to prepare a suspect's arm goes to the weight of the evidence, not its admissibility. See Code § 18.2-268.11; Stroupe v. Commonwealth, 215 Va. 243, 245, 207 S.E.2d 894, 896 (1974); Artis, 19 Va. App. at 171, 450 S.E.2d at 167. Accordingly, we cannot say the trial judge abused his discretion in admitting into evidence the certificate of blood analysis. Furthermore, Snider retained "the right to introduce evidence on his own behalf to show noncompliance with the aforesaid procedures . . . and that as a result his rights were prejudiced." Code § 18.2-268.11. See also Stroupe, 215 Va. at 245, 207 S.E.2d at 896 (observing that the statute allows the

defendant to prove by the nurse the particulars of extracting his blood).

## Sufficiency of the Evidence

Snider next argues that even if his blood alcohol content exceeded the legal limit to operate a motor vehicle, the Commonwealth failed to prove that he consumed alcohol prior to the accident or that he did not consume alcohol after the accident.

"On appeal, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom." Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987). So viewed, the evidence proved that Trooper Olinger noticed that Snider's speech was slurred, his eyes were bloodshot and glassy, and he had an odor of alcohol about his person. Because of those observations, Trooper Olinger asked Snider if he had consumed alcohol after the accident. Snider told her that he did not have anything to drink after the accident. He told her that he consumed four beers before the accident, the last being about thirty minutes prior to the accident. Snider disputed only in part Trooper Olinger's testimony concerning his statement. He testified that he did not remember Trooper Olinger asking him whether he drank "before or after" the accident; he testified that he told her he had been drinking.

The trial judge accepted Trooper Olinger's testimony and did

not believe Snider's testimony that he consumed the alcohol after the accident. "The weight which should be given to evidence and whether the testimony of a witness is credible are questions which the fact finder must decide." See Bridgeman v. Commonwealth, 3 Va. App. 523, 528, 351 S.E.2d 598, 601 (1986). Trooper Olinger's testimony was competent, was not inherently incredible, and, combined with the results of the blood alcohol test, was sufficient to prove beyond a reasonable doubt that Snider was guilty of driving while under the influence of alcohol.

For these reasons, we affirm the conviction.

Affirmed.