COURT OF APPEALS OF VIRGINIA

Present:    Judges Clements, Felton and McClanahan
Argued at Alexandria, Virginia


WILLIAM L. WING

MEMORANDUM OPINION[*] BY
v.        Record No. 1760-03-4        JUDGE WALTER S. FELTON, JR.
AUGUST 3, 2004

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Leslie M. Alden, Judge

Corinne J. Magee (The Magee Law Firm, PLLC, on brief), for
appellant.

Kathleen B. Martin, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellee.


William L. Wing was convicted in a bench trial of driving under the influence of alcohol in

violation of Code § 18.2-266.  On appeal, he contends that the trial court erred in admitting the

certificate of blood alcohol analysis from his breath test because the test was not conducted in

compliance with Code § 18.2-268.2 *et seq.*, that his coughing during the testing period made him

unable to take the breath test, and that a blood test should have been made available to him.  He

also contends that the trial court erred in denying his motion to dismiss the charge because his

evidence rebutted the statutory presumption that he was driving under the influence of

intoxicants at the time of his arrest.  Finding no error, we affirm Wing's conviction.

BACKGROUND

At approximately 2:50 a.m. on November 9, 2002, Trooper Caren Miller stopped Wing who

was traveling south on Interstate 95 near Franconia in Fairfax County.  The trooper observed

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Wing's vehicle swerve from the center lane into the right lane, back into the center lane, swerve into the left lane and then back into the center lane. The trooper also observed the wheels of Wing's car cross over the lane markings several times as he attempted to manipulate the "S" curve at the Springfield interchange.

When the trooper approached the car driven by Wing, she detected a strong odor of alcohol coming from the car, and observed that Wing had red, glassy eyes and slurred speech. Wing performed several field sobriety tests, adequately completing some but failing others. Wing told the trooper that he had consumed two cranberry-vodka drinks about thirty minutes before he was stopped. Wing was arrested for driving under the influence of alcohol and advised of the implied consent law. Wing agreed to take the breath test.

Once he was in the trooper's vehicle, Wing began coughing. At trial, the trooper described Wing's coughing during all relevant periods as "a very dry hacking cough." Wing told the trooper that he had a chest cold and that he had taken Robitussin for his cough about five hours earlier. He was taken to the Fairfax Adult Detention Center where a breath test was administered at 3:25 a.m.

The first time Wing blew a breath sample into the breathalyzer testing device, he did not blow into the breathalyzer for the required time, as a result of his coughing, to provide a sufficient sample to test. The breathalyzer indicated that testing could not be accomplished because there was a "deficient sample." Trooper Miller did not give a printout of this message to Wing. When the breathalyzer was reset in preparation for another test, it indicated a reading of "ambient detected," meaning that the clean air required in the chamber for testing was not present. The breathalyzer does not provide a printout of this particular message. After the breathalyzer was again reset and indicated that it was available to test, Wing provided two valid breath samples. He continued to cough intermittently between the testing periods. The breathalyzer recorded that Wing's blood

alcohol content (BAC) was 0.11%.[1]  Wing was given a printout of the results of this test.  During

the testing period, Wing did not complain that he was unable to take the test.  No blood test was

offered to Wing, and he did not request one.

At trial, Wing objected to the admissibility of the certificate of analysis because his repeated

coughing rendered him unable to take the breath test, and because he was not provided copies of

the results of all breath samples as required under Code §§ 18.2-268.2 and 18.2-269.9.  The trial

court admitted the certificate of analysis over Wing's objection.

In addition to his own testimony, Wing presented expert testimony questioning the accuracy

of the breath results reported on the certificate of analysis.

At the conclusion of the defense case, the trial court denied Wing's motion to dismiss and

convicted Wing of driving under the influence of alcohol in violation of Code § 18.2-266.

ANALYSIS

A.  ADMISSIBILITY OF THE CERTIFICATE OF ANALYSIS

Wing contends that the trial court should not have admitted the certificate of blood

alcohol analysis from his breath test.  He contends he was not given the results of his first and

second breath tests, that his coughing affected the accuracy of the breath test results, and that he

was not offered a blood test, even though his coughing made him physically unable to take the

breath test.

Code § 18.2-268.2(B) provides in pertinent part that a person arrested for violating Code

§ 18.2-266(i) or (ii), "shall submit to a breath test.  If . . . the person is physically unable to

submit to the breath test, a blood test shall be given."  Code § 18.2-268.2(B) also provides that

the person tested has the right "to see the blood-alcohol reading on the equipment used to

---

[1] A blood alcohol concentration of .08 or more creates a rebuttable presumption that the person tested was under the influence of intoxicants at the time of the offense.  See Code § 18.2-269; Castillo v. Commonwealth, 21 Va. App. 482, 486, 465 S.E.2d 146, 148 (1995).

perform the breath test" and to receive a copy of the written printout of the test result if the equipment "automatically produces" a printout.

The first time Wing blew into the breathalyzer, he failed to blow enough air into the breathalyzer for the required time, as a result of his coughing, resulting in the machine indicating a "deficient sample." Although the machine produced a printout, the trooper did not give a copy of that printout to Wing. The breathalyzer was reset for another test but then produced an indication of "ambient detected." The machine does not produce a written printout of this reading. Wing then successfully completed the breath test and was given a copy of the printed results, which showed a BAC of 0.11%.

Code § 18.2-268.11 provides in pertinent part that provisions "relating to taking, handling, identifying, and disposing of blood or breath samples are procedural and not substantive. Substantial compliance shall be sufficient." The principle of substantial compliance "operates to replace the protective safeguards of specificity with a less exacting standard of elasticity, in order to achieve a beneficial and pragmatic result." Snider v. Commonwealth, 26 Va. App. 729, 733, 496 S.E.2d 665, 666 (1998). In determining whether substantial compliance has been met, "a minor, trivial difference can be tolerated whereas a material difference cannot." Id. The burden is on the Commonwealth to prove that it substantially complied with the statutory requirements. See id. at 732, 496 S.E.2d at 666.

Code § 18.2-268.9 provides that, "[t]o be capable of being considered valid as evidence in a prosecution under § 18.2-266 . . . , chemical analysis of a person's breath shall be performed . . . in accordance with methods approved by the Department of Criminal Justice Services, Division of Forensic Science." Code § 18.2-268.9 further provides that:

> Any individual conducting a breath test under the provisions of § 18.2-268.2 shall issue a certificate which will indicate that the test was conducted in accordance with the Division's specifications, the equipment on which the breath test was

- 4 -

conducted has been tested within the past six months and has been found to be accurate, the name of the accused, that prior to administration of the test the accused was advised of his right to observe the process and see the blood alcohol reading on the equipment used to perform the breath test, the date and time the sample was taken from the accused, the sample's alcohol content, and the name of the person who examined the sample. This certificate, when attested by the individual conducting the breath test, shall be admissible in any court in any criminal or civil proceeding as evidence of the facts therein stated and of the results of such analysis. Any such certificate of analysis purporting to be signed by a person authorized by the Division shall be admissible in evidence without proof of seal or signature of the person whose name is signed to it. A copy of the certificate shall be promptly delivered to the accused.

Trooper Miller, the breath test operator, was licensed to administer the breath examination. She testified concerning the manner in which she administered the test to Wing. The trooper signed the certificate of analysis attesting that it was an accurate record of the test conducted, that the test was conducted in accordance with the type of equipment, methods and specifications approved by the Division of Forensic Science, and that the equipment was recently tested and found to be accurate. See Rasmussen v. Commonwealth, 31 Va. App. 233, 239 n.2, 522 S.E.2d 401, 404 n.2 (1999) (explaining that properly attested certificate of analysis "assures an accused that the machine is operating as designed").

The trooper's failure to give Wing a copy of the "deficient sample" printout resulting from the first attempt to blow air into the breathalyzer did not prejudice Wing. That printout simply reflected that the machine did not receive enough air in the allotted time to permit the test to occur. Code § 18.2-268.2(B) requires that only a printout of a "test" result be given to the test taker. A "deficient sample" printout is not a printout of a test result.

Wing was not entitled to a printout of the "ambient detected" reading because no printout was produced by the machine for that reading. The plain language of Code § 18.2-268.2(B) provides that the individual being tested is entitled to a printout of the result only if the machine

- 5 -

"automatically produces" a printout. Where no printout is produced, there is not a copy to give the test taker. In Rasmussen, this Court noted that the individual being tested was not entitled to view results of each discreet breath *sample* taken for testing, but was only entitled to review results of a breath *test* that was actually printed. Id. at 240, 522 S.E.2d at 404. Moreover, any procedural irregularity goes only to the weight to be given to the certificate of analysis, not its admissibility. Code § 18.2-268.11 provides, in pertinent part, that "failure to comply with any steps or portions thereof shall not of itself be grounds for finding the defendant not guilty, but shall go to the weight of the evidence and shall be considered with all of the evidence in the case."

From the record before us, we conclude that the trial court did not err in finding that there had been substantial compliance with the requirements of Code § 18.2-268.9.

Wing also asserts that the certificate of analysis was inadmissible because his coughing rendered him unable to take the breath test and, therefore, he should have been given a blood test. See Code § 18.2-268.2(B) (requiring that a blood test be given if a breath test is unavailable or if the defendant is "physically unable to submit to the breath test.").

In Sawyer v. Commonwealth, 43 Va. App. 42, 596 S.E.2d 81 (2004), we declared:

> If an accused driver claims he was physically unable to submit to the breath test, "the burden . . . falls on the accused to establish that fact. After an accused presents evidence of his physical inability, the Commonwealth is entitled to present evidence in rebuttal, after which it rests upon the trial court to determine whether the accused satisfied his or her burden." "A trial court's determination that the accused driver has carried his burden of proof as to physical inability is a condition precedent to any finding that the Commonwealth was required to offer a blood test." If the trial court finds the driver has not carried his burden of proving physical inability, "the Commonwealth [is] relieved of any further burden, and no blood test [is] required to be given even if requested by the defendant."

Id. at 54, 596 S.E.2d at 87 (citations omitted).

Wing's coughing did not prevent him from taking the breath test. Trooper Miller, a licensed breath test operator who administered the test, described Wing's cough as a "dry hacking cough," which would not affect the accuracy of the test results. She testified that had the cough been "juicy," it would have affected the results by bringing alcohol into the mouth from the stomach. She further testified that if there had been excess alcohol in the mouth from coughing, the breathalyzer would have recorded an "invalid sample" reading and that event did not occur during Wing's testing.

Wing relies on the testimony of his expert who testified that while "it would just be speculation . . . [a]nything that will bring alcohol up into the mouth" during a breath test, such as coughing, "will give an erroneously high reading." Wing's expert admitted that his testimony was based solely on the information provided by Wing and that he could not testify as to the kind of cough Wing had when he was arrested and subsequently tested.

Moreover, the record reflects that Wing was able to provide a sufficient breath sample to be analyzed on his last attempt. When he provided a sufficient breath sample, it produced a BAC reading of 0.11%. The Commonwealth had no duty to provide a blood test after it successfully conducted the breath analysis test.

We conclude that the trial court could reasonably conclude from the evidence before it that Wing was not unable to take the breath test and that his coughing did not render the results of the breathalyzer invalid.

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988). For the foregoing reasons, we conclude that the trial court did not abuse its discretion in admitting the certificate of analysis into evidence.

B.  MOTION TO DISMISS

Wing also contends that the trial court erred in denying his motion to dismiss the charge because his evidence rebutted the statutory presumption that he was driving under the influence of intoxicants at the time of his arrest.

When faced with a challenge to the sufficiency of evidence, we view the evidence in the light most favorable to the Commonwealth granting to it all reasonable inferences fairly deducible therefrom.  Commonwealth v. Jenkins, 255 Va. 516, 521, 499 S.E.2d 263, 265 (1998). We also "'presume the judgment of the trial court to be correct' and reverse only if the trial court's decision is 'plainly wrong or without evidence to support it.'"  Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (citations omitted); see also McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*).  "'This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'"  Kelly, 41 Va. App. at 257-58, 584 S.E.2d at 447 (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

A person arrested for driving under the influence within three hours of such offense is deemed to have consented to a blood alcohol test.  See Code § 18.2-268.2.  Test results that are obtained in compliance with the requirements of Code § 18.2-268.2 create certain rebuttable presumptions.  See Code § 18.2-269 (providing a rebuttable presumption that the person tested was under the influence of intoxicants at the time of offense when a breath test shows a reading of 0.08% or greater).

"Code § 18.2-269 expressly provides that the presumptions it creates arise only when a blood-alcohol test is conducted 'in accordance with the provisions of § 18.2-268 [now Code § 18.2-268.2 *et seq.*].'"  Essex v. Commonwealth, 228 Va. 273, 286, 322 S.E.2d 216, 223 (1984)

- 8 -

(footnote omitted). For the reasons we have stated above, we conclude that Trooper Miller complied with the requirements of Code § 18.2-268.9 in administering the breath test to Wing.

In order to rebut the statutory presumption, Wing presented expert testimony regarding the accuracy of the test results establishing his BAC of 0.11%. Specifically, the expert based his opinion on the number of drinks Wing informed him he had consumed prior to his arrest, and on the effects of his coughing on the test results. Wing testified that he only had two cranberry-vodka drinks about thirty minutes before he was stopped, but did not know the strength of the alcoholic content of those drinks. His expert testified that two mixed drinks, assuming each contained one and one-half ounces of eighty proof vodka, would normally produce an approximate BAC of 0.04 at the time Wing was administered the breath test. He conceded, however, that his opinion was based solely on information Wing had provided to him and that he had no independent knowledge of the number or strength of the drinks consumed by Wing that evening. While Wing testified that he had a chest cold for which he had taken Robitussin containing alcohol earlier in the day, his expert testified that the cough medication would have a negligible effect in the test result.

Wing's expert further testified that the accuracy of the breath test result was of questionable validity as a result of Wing's continuous coughing. He explained that coughing would likely produce alcohol up from the stomach or in phlegm, which in turn could lead to an erroneous breath analysis reading. He conceded that the breathalyzer is designed to alert the operator when there is excess mouth alcohol, but also testified that the breathalyzer was not foolproof. He testified that a blood test would produce a more accurate reading for a person who is coughing continuously. However, he could not testify as to the type of cough Wing had. On the other hand, Trooper Miller, who witnessed the coughing, testified that while a "juicy" or wet cough would have presented a problem with the breath test, Wing's cough was a "hacking dry cough."

- 9 -

The trial court found that Wing's evidence including his expert's testimony was not sufficient "to undercut the validity and reliability of the blood alcohol certificate." It found that there was "no sufficient evidence to suggest how much alcohol was in the two drinks," that Wing's expert could not say with certainty how much alcohol Wing had consumed or that "any coughing, if it occurred," affected the breath test "in any particular way." It concluded that the statutory presumption flowing from the test results reflected in the certificate of analysis had not been rebutted.

"The weight which should be given to evidence and whether the testimony of a witness is credible are questions which the fact finder must decide." Snider, 26 Va. App. at 735, 496 S.E.2d at 668 (citation omitted).

Based on our review of the record, we conclude that the trial court could reasonably conclude from the totality of the evidence before it that Wing's coughing did not affect the results of the BAC shown on the certificate of analysis and that Wing's evidence was not sufficient to rebut the presumption that he was operating his motor vehicle under the influence of intoxicants when he was arrested. We therefore conclude that the trial court did not err in denying Wing's motion to dismiss the charge.

For the above reasons, we affirm the judgment of the trial court.

Affirmed.


A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

- 10 -