COURT OF APPEALS OF VIRGINIA

Present:    Judges Frank, Kelsey and Senior Judge Willis
Argued at Richmond, Virginia


RICHARD A. CUTRIGHT

                                                                    OPINION BY
v.        Record No. 1559-03-2                         JUDGE D. ARTHUR KELSEY
                                                                  AUGUST 17, 2004

COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
                              Ann Hunter Simpson, Judge

                Benjamin H. Woodbridge, Jr. (Woodbridge, Ventura & Kelly, on
                brief), for appellant.

                Steven A. Witmer, Assistant Attorney General (Jerry W. Kilgore,
                Attorney General, on brief), for appellee.


        The trial court convicted Richard A. Cutright of driving while intoxicated in violation of

Code § 18.2-266.  Because the Commonwealth gave him only one laboratory to choose from to

perform an independent blood analysis, Cutright argues that the court should have dismissed his

DUI charge or, short of that, at least suppressed the results of the blood tests.  Finding neither

remedy applies in this case, we affirm.

                                                    I.

        On appeal, we review the evidence in the "light most favorable" to the Commonwealth.

Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003).  "That principle

requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth,

and regard as true all the credible evidence favorable to the Commonwealth and all fair

inferences that may be drawn therefrom.'"  Seaton v. Commonwealth, 42 Va. App. 739, 743, 595

S.E.2d 9, 11 (2004) (citation omitted).

On February 16, 2002, at 2:55 a.m., Richard Cutright drove into a commuter parking lot. Noticing Deputy G.M. Harvey sitting in his police cruiser, Cutright approached and asked him if he had seen some people Cutright was looking for. Deputy Harvey detected a strong odor of alcohol coming from Cutright and "asked him how much he had had to drink that evening." Cutright admitted drinking about "eight beers" earlier in the evening. Having observed Cutright driving into the lot, Deputy Harvey conducted four field sobriety tests on Cutright, three of which he failed, as well as a preliminary breath test, which produced a high result. Deputy Harvey then arrested Cutright for driving under the influence.

Deputy Harvey informed Cutright of Virginia's implied consent law and transported him to Mary Washington Hospital for a blood test. Medical personnel drew two vials of blood. Harvey retained one vial for analysis by the Division of Forensic Science. He provided Cutright with a form so Cutright could choose an additional laboratory for an independent analysis of the second vial. The form listed only one approved laboratory, Medical College of Virginia Toxicology Laboratory.[1] Cutright requested that the second vial of blood be sent to MCV. Both the Division of Forensic Science and MCV found Cutright's blood alcohol content to be .12%.

The Commonwealth charged Cutright by misdemeanor warrant asserting a violation of Code § 18.2-266.[2] After being convicted in the general district court, Cutright appealed to the circuit court for a trial *de novo*.

---

[1] The statement of facts stipulated that the Division of Forensic Science contacted six laboratories in an effort to recruit additional labs to perform this service, but none agreed to do so. The MCV employees performing the independent laboratory analyses did not work for the state, but were contract employees employed by the private hospital corporation.

[2] The warrant substantially tracked each of the statutory subdivisions of Code § 18.2-266:

> It shall be unlawful for any person to drive or operate any motor vehicle, engine or train (i) while such person has a blood alcohol concentration of 0.08 percent or more by weight by volume or 0.08 grams or more per 210 liters of breath as indicated by a chemical test administered as provided in this article, (ii) while such person

At the time of Cutright's arrest, Code § 18.2-268.6 provided that the arresting officer "shall give to the accused a form provided by the Division which sets forth the procedure to obtain an independent analysis of the blood in the second container, and a list of the names and addresses of laboratories approved by the Division." The statute continued: "If the accused directs the officer in writing on the form to forward the second container to an approved laboratory of the accused's choice, the officer shall do so." Id.[3]

In the circuit court, Cutright did not challenge the prosecution's evidence of his inability to pass simple field sobriety tests, his admitted consumption of eight beers, the strong smell of alcohol coming from him, or, for that matter, the Commonwealth's assertion that he had driven under the influence of alcohol. Instead, Cutright argued only that Code § 18.2-268.6 guaranteed him the right to choose between at least two independent laboratories. Because only one laboratory had contracted with the Commonwealth to provide independent testing services, Cutright argued, the trial court erred in not dismissing the DUI charge or, at a minimum, in not suppressing the BAC test results. The trial court rejected these arguments, as do we.

is under the influence of alcohol, (iii) while such person is under the influence of any narcotic drug or any other self-administered intoxicant or drug of whatsoever nature, or any combination of such drugs, to a degree which impairs his ability to drive or operate any motor vehicle, engine or train safely, or (iv) while such person is under the combined influence of alcohol and any drug or drugs to a degree which impairs his ability to drive or operate any motor vehicle, engine or train safely.

[3] In 2003, the General Assembly amended Code §§ 18.2-268.6 and 18.2-268.7. See 2003 Va. Acts, chs. 933, 936. The amendments took effect after Cutright's conviction, and thus, have no bearing on this case.

II.

A.  DISMISSAL REMEDY

The Commonwealth charged Cutright with violating all four subsections of Code § 18.2-266.  Even if it had not done so, the Commonwealth could rely on any subsection of Code § 18.2-266 in support of a charge asserting a violation of the statute generally.  See Code § 18.2-266 ("A charge alleging a violation of this section shall support a conviction under clauses (i), (ii), (iii) *or* (iv)."  (emphasis added)).

The incriminating evidence against Cutright included not only the two BAC test results, but also Deputy Harvey's extensive observations of Cutright's intoxication moments after he stepped out of his car.[4]  This evidentiary showing — even without the BAC test results — would support a DUI conviction under Code § 18.2-266(ii).  See Oliver v. Commonwealth, 40 Va. App. 20, 24, 577 S.E.2d 514, 516 (2003) ("Test results from a breath or blood test are not necessary or required to prove driving under the influence of alcohol or drugs.").[5]  The absence of the BAC test results would require dismissal only if the Commonwealth had prosecuted Cutright *solely* for violating subsection (i) of Code § 18.2-266, the "'per se' statute" predicating guilt on blood alcohol content alone.  Kehl v. Commonwealth, 15 Va. App. 602, 605, 426 S.E.2d 127, 129 (1993).

---

[4] In making this observation, we do not consider the results of Cutright's preliminary breath test.  See Code § 18.2-267(E).

[5] See also Brooks v. Newport News, 224 Va. 311, 316, 295 S.E.2d 801, 804 (1982) (recognizing that the "result of a breath analysis is but auxiliary proof which may tend to corroborate evidence of the objective symptoms" of intoxication); Thurston v. Lynchburg, 15 Va. App. 475, 483, 424 S.E.2d 701, 705-06 (1992); Code § 18.2-268.10(D) ("The court or jury trying the case involving a violation of clause (ii), (iii) or (iv) of § 18.2-266 or § 18.2-266.1, or 18.2-272 shall determine the innocence or guilt of the defendant from all the evidence concerning his condition at the time of the alleged offense."); Code § 18.2-268.10(A) (providing that the "court shall, regardless of the result of any blood or breath tests, consider other relevant admissible evidence of the condition of the accused").

Dismissal of a subsection (ii) DUI charge may be appropriate in cases involving an outright failure of the Commonwealth to provide any independent testing of any kind despite a statutory requirement that it do so. See, e.g., Shoemaker v. Commonwealth, 18 Va. App. 61, 64, 441 S.E.2d 354, 356 (1994) (holding dismissal appropriate where Commonwealth failed to take further action when sample was returned unopened and marked "refused" by lab selected by defendant); Kemp v. Commonwealth, 16 Va. App. 360, 365-66, 429 S.E.2d 875, 878-79 (1993) (dismissing charge where independent BAC test results were never submitted to the court or made available to defendant).[6]

The dismissal remedy, however, cannot be sensibly applied to this case. Cutright requested and received independent BAC testing at MCV. He concedes on appeal, as he did in the trial court, that no evidence suggested that these results were invalid or that additional testing elsewhere might have produced different findings. In other words, even Cutright does not speculate that a *second* independent lab would have come up with exculpatory evidence previously undiscovered by either the MCV lab or the Division of Forensic Science. Under these circumstances, no statutory policy would be served by vacating a DUI conviction of a drunk driver who otherwise concedes his guilt. The trial court, therefore, did not err in refusing to dismiss the DUI charge against Cutright.[7]

---

[6] See also Sullivan v. Commonwealth, 17 Va. App. 376, 379, 437 S.E.2d 242, 244 (1993) (reversing trial court's admission of certificate because appellant was not given a chance to elect between blood and breath test as required under predecessor statute); Snead v. Commonwealth, 17 Va. App. 372, 374, 437 S.E.2d 239, 241 (1993) (holding defendant was improperly denied potentially exculpatory evidence); Wendel v. Commonwealth, 12 Va. App. 958, 964, 407 S.E.2d 690, 693 (1991) (finding error when, "[w]ithout explanation, no results were made available to the accused at trial").

[7] Our analysis is unaffected by Cutright's reliance on Breeden v. Commonwealth, 15 Va. App. 148, 421 S.E.2d 674 (1992), which involved an officer failing to offer an accused the election between a breath or blood test — a substantive right under a predecessor version of the statute. As we recently explained, "Breeden is inapplicable because the essential feature of the statute it interpreted has changed." Oliver, 40 Va. App. at 23, 577 S.E.2d at 516.

## B. SUPPRESSION OF BAC TEST RESULTS

Even if he has no right to a dismissal, Cutright argues, the trial court still erred by not suppressing the evidence of his BAC test results. To answer this contention, we need not determine whether the now-superseded language in Code § 18.2-268.6 contemplated two or more laboratories as Cutright argues (a conclusion he finds implicit in § 18.2-268.6's use of the plural in the phrase "list of the names and addresses of laboratories"), or whether the list could include just one lab as the Commonwealth asserts (a conclusion it finds implicit in § 18.2-268.6's silent incorporation of Code § 1-13's tolerance for using plural and singular language interchangeably). We hold that, in either event, the trial court had no obligation to suppress the BAC test results.

Absent an infirmity of constitutional dimensions, the "mere violation of state statutory law does not require that the offending evidence be suppressed, unless the statute expressly provides for an evidentiary exclusion remedy." Seaton, 42 Va. App. at 757 n.7, 595 S.E.2d at 17 n.7; see also Vinson v. Commonwealth, 258 Va. 459, 469, 522 S.E.2d 170, 177 (1999); Janis v. Commonwealth, 22 Va. App. 646, 651, 472 S.E.2d 649, 652, aff'd on reh'g en banc, 23 Va. App. 696, 479 S.E.2d 534 (1996); Penn v. Commonwealth, 13 Va. App. 399, 406-07, 412 S.E.2d 189, 193 (1991), aff'd per curiam, 244 Va. 218, 420 S.E.2d 713 (1992); Thompson v. Commonwealth, 10 Va. App. 117, 122, 390 S.E.2d 198, 201 (1990).

The DUI statutes nowhere provide for a suppression remedy for procedural violations. Instead, Code § 18.2-268.11 states that a violation of the procedural steps of Code §§ 18.2-268.2 through 18.2-268.9 "shall go to the weight of the evidence and shall be considered with all the evidence in the case." See Shumate v. Commonwealth, 207 Va. 877, 883, 153 S.E.2d 243, 247 (1967) (holding that procedural violations merely affect "the weight of the evidence"); Snider v. Commonwealth, 26 Va. App. 729, 734, 496 S.E.2d 665, 667 (1998). The same provision also

makes clear that the defendant may "introduce evidence on his own behalf to show noncompliance with the aforesaid procedures or any part thereof, and that as a result his rights were prejudiced." Code § 18.2-268.11; see also Snider, 26 Va. App. at 734, 496 S.E.2d at 667. By statute, therefore, the legislative remedy for a *procedural violation* is not suppression of the evidence, but a full and fair opportunity for both sides to attempt to prove or disprove any prejudicial effect of the violation.[8]

Mere procedural violations must be distinguished from cases where the essential precondition of the implied consent statute — a lawful and timely arrest — has not been met. See Smith v. Commonwealth, 32 Va. App. 228, 233, 527 S.E.2d 456, 459 (2000) (noting that "for an arrestee to be deemed to have given implied consent under Code § 18.2-268.2, the arrest must have been lawful"); see also Overbee v. Commonwealth, 227 Va. 238, 243, 315 S.E.2d 242, 244 (1984) (untimely arrest); Thomas v. Marion, 226 Va. 251, 254, 308 S.E.2d 120, 122 (1983) (unlawful arrest); Durant v. Suffolk, 4 Va. App. 445, 449, 358 S.E.2d 732, 734 (1987). By failing to satisfy a basic condition underlying the statute, the Commonwealth has no right to collect the sample in the first place and, *a fortiori*, even less right to offer into evidence test results based on the sample.

---

[8] The 1962 version of the statute required strict compliance with the procedural steps, violation of which compelled a finding of not guilty. See Brush v. Commonwealth, 205 Va. 312, 317, 136 S.E.2d 864, 868 (1964); Code § 18.1-55(f) (1950 & Supp. 1962). The General Assembly amended the statute in 1964 to require only "substantial compliance" with the procedural requirements. See Code § 18.1-55.1(S) (1964). The Virginia Supreme Court discussed the change from strict compliance to substantial compliance in 1967. See Shumate, 207 Va. at 882-83, 153 S.E.2d at 247 (noting that the Act now "provides that the question is procedural, and a failure to comply with the directed procedures goes to the weight of the evidence and is to be considered with all the evidence in the case, with the right to the defendant to show noncompliance and resulting prejudice"). Every statutory revision since that time has retained the substantial compliance language. Cf. Code § 18.2-268.11; Code § 18.2-268(Z) (1991).

It may also be appropriate to exclude the BAC test results in cases where the statutory violation calls into serious question the reliability of the test results.  See, e.g., Hudson v. Commonwealth, 21 Va. App. 184, 186, 462 S.E.2d 913, 914 (1995) (holding BAC test results inadmissible due to the potential contamination of a blood sample with benadine topical agent). In suppressing the evidence in such cases, however, the courts are not sanctioning the prosecution — but, rather, simply refusing to admit unreliable expert evidence.  Id. (noting that prosecutor offered no evidence of "chemical properties of benadine" and gave no explanation of why its use substantially complied with statutory protocol requiring the use of "soap and water, polyvinylpyrrolidone iodine or benzalkonium chloride").

Nothing in the DUI statutes provides for suppression of BAC test results in the event the Commonwealth's form includes only one independent laboratory.  The absence of a second, or third, or fourth lab on the list of approved laboratories does not violate any preconditions to the lawful application of the implied consent statute.  Nor does it call into serious question the evidentiary reliability of the BAC test results of the one independent lab available to the defendant — especially where, as here, that independent lab confirmed precisely the findings of the Division of Forensic Science.  Thus, the intended "safeguard" has been fulfilled by requiring the Commonwealth to "take two blood samples and allow the accused to obtain his separate blood analysis, so that the results can be compared with the results of the Commonwealth and so that any discrepancies can be considered by the trier of fact."  Wendel v. Commonwealth, 12 Va. App. 958, 961, 407 S.E.2d 690, 692 (1991).

Cutright argues that this conclusion effectively leaves him without a remedy for what he contends is a statutory violation affecting the BAC evidence.  We disagree.  The absence of a statutory suppression remedy did not prevent Cutright from introducing evidence if he felt "his rights were prejudiced."  See Code § 18.2-268.11; Snider, 26 Va. App. at 734, 496 S.E.2d at 667.

Nor did it preclude him from arguing that the BAC test results should receive discounted evidentiary weight by the factfinder to the extent such prejudice could be shown.

The trial court in this case understood its duty to weigh the evidence in this way. Noting that Cutright did not challenge the accuracy of the BAC test results, the trial court concluded that no evidence demonstrated that "his rights were prejudiced." "There is no suggestion," the trial court emphasized, "that Mr. Cutright's independent analysis was in any way deficient or inaccurate." To be sure, Cutright did not provide any explanation for the fact that MCV's independent results exactly matched the results obtained by the Division of Forensic Science, other than the natural inference that one confirmed the reliability of the other. Given these findings, we discern no principled legal basis for Cutright's assertion that the trial court had a duty to suppress the BAC test results.

III.

Finding the trial court did not err by refusing to dismiss Cutright's DUI charge or to suppress the BAC test results, we affirm.

Affirmed.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk