COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Fitzpatrick, Judges Benton, Elder, Frank, Humphreys, Clements, Felton,
           Kelsey and McClanahan
Argued at Richmond, Virginia


DAVID ALAN STEVENS
                                                          OPINION BY
v.      Record No. 1415-03-4                     JUDGE ELIZABETH A. McCLANAHAN
                                                         AUGUST 9, 2005
COMMONWEALTH OF VIRGINIA


UPON REHEARING EN BANC

FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Burke F. McCahill, Judge

      Bonnie H. Hoffman, Deputy Public Defender (Office of the Public
      Defender, on briefs), for appellant.

      Eugene Murphy, Assistant Attorney General (Jerry W. Kilgore,
      Attorney General, on brief), for appellee.


      By published opinion dated October 19, 2004, a divided panel of this Court affirmed the

judgment of the trial court.  Stevens v. Commonwealth, 44 Va. App. 122, 603 S.E.2d 642 (2004).

We stayed the mandate of that decision and granted a rehearing *en banc*, 44 Va. App. 414, 605

S.E.2d 329 (2004).  Upon rehearing *en banc*, it is ordered that the stay of the mandate is lifted,

and the judgment of the trial court is affirmed.

      David Alan Stevens appeals his conviction for aggravated involuntary manslaughter in

violation of Code § 18.2-36.1.  He contends that the trial court erred by:  (1) failing to foreclose

prosecution of the aggravated involuntary manslaughter charge on the ground that the

Commonwealth did not comply with the procedural requirements of a driving under the

influence (DUI) charge; (2) failing to exclude a hospital toxicology report based on insufficient

proof of reliability; (3) failing to instruct the jury on criminal negligence; and (4) finding the

evidence sufficient to prove he was guilty of aggravated involuntary manslaughter. For the reasons that follow, we affirm the trial court.

## I. BACKGROUND

On appeal, we review the evidence in the light most favorable to the Commonwealth. Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003). That principle requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." Kelly v. Commonwealth, 41 Va. App. 250, 254, 584 S.E.2d 444, 446 (2003) (*en banc*) (citations omitted).

So viewed, on June 29, 2002, appellant struck an automobile driven by Barry Childers while Childers was turning left at an intersection. As a result, Heather Watson, a passenger in Childers' vehicle, was killed. Volunteer rescue workers treated appellant at the scene, and appellant told one of them that he had come from a bar and had been drinking "lots and lots and lots." Appellant was transported to a local hospital emergency room. Appellant's hospital admission records show that appellant stated he had consumed "between 12 – 24 beers" and "[more than] 18 beers" prior to the accident.

After the accident, the Loudoun County Sheriff's Office dispatched Deputy Chris Coderre to the hospital to arrest appellant. Appellant was waiting to undergo a Computed Axial Tomography scan when Coderre located him. Coderre said he could clearly smell alcohol in the room that appellant was in, the smell being especially obvious in the hospital's sterile environment. After the scan, Coderre spoke to appellant and informed him that he was under arrest for DUI. Coderre read the implied consent law to appellant,[1] explained the procedure, and

---

[1] Code § 18.2-268.2, the implied consent law, provides that any person operating a motor vehicle on a highway in the Commonwealth is deemed, as a condition of operating the vehicle, to

asked him to submit to a blood test, to which appellant agreed. Coderre watched a hospital lab technician draw two vials of appellant's blood, then seal, package, tape, and initial them. Once the blood was drawn, Coderre informed appellant of his right to an independent analysis of the blood sample, asked him if he wished to have it done, and, if so, to sign the form authorizing the test. Coderre offered appellant the form and his pen, upon which appellant stated, "I'm too f---ed up. I can't sign sh--." Coderre kept the form with a vial of appellant's blood and took it with him when he left the hospital. The form and blood sample remained locked in the trunk of Coderre's police cruiser until the following Monday when Coderre submitted it to the Department of Forensic Sciences for testing. An analysis of this blood sample showed appellant's blood alcohol content was .21. The hospital's blood toxicology report indicated that appellant's blood alcohol content was .24 or .25. On July 1, 2002, the Commonwealth charged appellant with driving under the influence, pursuant to Code § 18.2-266, and aggravated involuntary manslaughter, pursuant to Code § 18.2-36.1.

At a pretrial hearing, the trial court suppressed the implied consent law blood sample analysis and precluded the Commonwealth from using the presumption of intoxication pursuant to Code § 18.2-269. The trial court based its ruling on a finding that the Commonwealth had failed to arrest appellant within the statutorily mandated period after the incident as required by Code § 18.2-268.2.[2] The court also ruled that appellant had not properly been provided the form requesting independent analysis of the blood sample. The court therefore dismissed prosecution of charges under Code § 18.2-266 (DUI) but allowed the Commonwealth to proceed with

have consented to have samples of his or her blood, breath, or both blood and breath, taken and tested for purposes of determining its alcohol and/or drug content.

[2] At the time of the incident, pursuant to Code § 18.2-268.2, consent was implied if the arrest was made within two hours of the alleged offense. In 2002, the General Assembly amended that statute to allow implied consent if the arrest was made within three hours of the alleged offense.

prosecution under Code § 18.2-36.1 (aggravated involuntary manslaughter). After a jury trial,

appellant was convicted of aggravated involuntary manslaughter and sentenced to fifteen years in

prison.

## II. ANALYSIS

### A. Implied Consent Law Procedural Violations Do Not Require Dismissal of an Aggravated Involuntary Manslaughter Charge

An aggravated involuntary manslaughter conviction under Code § 18.2-36.1 requires a

finding that the defendant was driving under the influence of either alcohol or drugs or a

combination of alcohol and drugs, as specified in clauses (ii), (iii) or (iv) of Code § 18.2-266.

The implied consent law governs procedural steps for conducting breath and blood tests for the

prosecution of DUI charges.

Appellant argues that a prosecution for aggravated involuntary manslaughter is inherently

a prosecution for DUI; thus, the implied consent law procedures apply.[3] At the time of

appellant's arrest, these procedures required the arresting officer to give the accused a form

indicating how he could obtain an independent analysis of the blood sample drawn.[4] Appellant

---

[3] Based on the holding in Hall v. Commonwealth, 32 Va. App. 616, 529 S.E.2d 829 (2000) (*en banc*), appellant contends that the trial court should have dismissed the aggravated manslaughter charge under Code § 18.2-36.1 on the ground that the Commonwealth did not comply with Code § 18.2-268.6. While it is true that Hall stands for the proposition that a prosecution under Code § 18.2-36.1 is necessarily a prosecution under Code § 18.2-266, the application of the rule in Hall is much narrower than appellant argues. Id. at 627, 529 S.E.2d at 835. The holding in Hall is limited to cases where inadmissible evidence is used to prove a violation of Code § 18.2-266 as a predicate to the involuntary manslaughter charge. Id. In Hall, the Court dismissed the involuntary manslaughter charge because the preliminary breath test analysis was admitted to prove a violation of Code § 18.2-266, in direct contravention of Code § 18.2-267(E), which provides that such results "shall not be admitted into evidence . . . ." Id. That is not the case here.

[4] In 2003, the General Assembly amended Code § 18.2-268.6 to eliminate the provision requiring the arresting officer to give the accused a form setting forth the procedures for obtaining an independent analysis of the blood sample. See Va. Acts, chs. 933, 936. Stevens was charged before the amendment took effect, and, therefore, the amendment does not apply in this case.

- 4 -

argues that because he did not receive the independent analysis form, the trial court should have dismissed the aggravated manslaughter charge.[5]

We disagree. Even if failure to comply with the implied consent law procedural requirements does not forbid a prosecution for aggravated manslaughter, blood test results are not required for a conviction under either Code §§ 18.2-266 or 18.2-36.1.[6]

Neither Code § 18.2-268.6 nor any of the other implied consent law statutes refer to Code § 18.2-36.1. Code §§ 18.2-268.2, -268.3, -268.4, -268.5, -268.8, -268.9 and -268.10 include specific language that they apply to violations of Code §§ 18.2-266 or -266.1 or a similar ordinance,[7] but none of those code sections mention Code § 18.2-36.1.[8] Only Code § 18.2-268.3

---

[5] Appellant argues that Artis v. City of Suffolk, 19 Va. App. 168, 450 S.E.2d 165 (1994), and Shoemaker v. Commonwealth, 18 Va. App. 61, 441 S.E.2d 354 (1994), support his contention that the officer's failure to ensure that appellant received the form is fatal to his conviction. Artis held that merely showing a form to the accused is insufficient to comply with the requirement that the form be given to the accused and, therefore, requires dismissal of the DUI charge. Artis, 19 Va. App. at 170-71, 450 S.E.2d at 166-67. Shoemaker held that failure to substantially comply with Code § 18.2-268.6 required dismissal of the DUI charge on the rationale that independent test results could have provided the accused with exculpatory evidence. Shoemaker, 18 Va. App. at 64, 441 S.E.2d at 356. However, in both of those cases, the defendant was charged with DUI under Code § 18.2-266, not with aggravated involuntary manslaughter under Code § 18.2-36.1, the statute at issue in the instant case. While failure to substantially comply with the procedural requirements for testing blood and breath samples under the implied consent law may bar the Commonwealth from a prosecution under the DUI statute (Code § 18.2-266) and may bar the Commonwealth from using those test results, that failure does not bar prosecution for aggravated involuntary manslaughter under Code § 18.2-36.1.

[6] Given our holding, we need not address the Commonwealth's alternative arguments: that there was no violation of the implied consent law; that only substantive violations of the implied consent law are relevant for the purposes of applying that statute; or, even if the violations are substantive, the proper remedy is not to dismiss the charge, but to rebut or suppress the evidence.

[7] We note that the legislature used the word "ordinance" and not "statute," removing any argument that Code § 18.2-36.1 is included under that language.

[8] It is not necessary for the other implied consent law statutes to recite the statutes to which they apply because they are either definitional (Code § 18.2-268.1), or they refer back to other provisions of the implied consent law (Code §§ 18.2-268.6, 18.2-268.7 and 18.2-268.11).

applies its provisions to an additional statute, specifically, Code § 18.2-51.4, maiming as a result of driving while intoxicated. Additionally, Code § 18.2-51.4 specifically provides that the implied consent law provisions apply upon arrest for a violation of that code section.[9] Had the General Assembly intended to require the implied consent law procedures and its related statutory provisions for a prosecution under Code § 18.2-36.1, it would have specifically provided so; however, it did not. See Jordan v. South Boston, 138 Va. 838, 844-45, 122 S.E. 265, 267 (1924) ("Courts cannot read into a statute something that is not within the manifest intention of the legislature as gathered from the statute itself. To depart from the meaning expressed by the words is to alter the statute, to legislate and not to interpret." (internal quotations and citation omitted)). The omission, in this context, makes it apparent that the legislature did not require those procedural hurdles.

Furthermore, blood test results are not required to prove intoxication for prosecution under clauses (ii), (iii) or (iv) of Code § 18.2-266, and, by extension, therefore, are not required for prosecution under Code § 18.2-36.1. See Oliver v. Commonwealth, 40 Va. App. 20, 24, 577 S.E.2d 514, 516 (2003) ("Test results from a breath or blood test are not necessary or required to prove driving under the influence of alcohol or drugs."). Only clause (i) of Code § 18.2-266, the per se statute predicating guilt on blood alcohol content alone, requires blood test results. Code § 18.2-36.1 does not require that the Commonwealth establish a violation of clause (i) of Code § 18.2-266; it only requires a violation of clauses (ii), (iii) or (iv). If the General Assembly intended to require a blood test for prosecution for involuntary manslaughter, it would have tied

_____

In 2004, the General Assembly added Code § 18.2-272 to most of the statutes cited above; see Va. Acts, ch. 1013.

[9] It is important to note that Code § 18.2-51.4 is the equivalent of Code § 18.2-36.1(B), except that it applies in cases of "serious bodily injury of another person resulting in permanent and significant physical impairment" instead of death and provides for a different felony classification.

- 6 -

the involuntary manslaughter statute to clause (i) and not just clauses (ii), (iii), and (iv).  Thus,

"'the result of a [blood] analysis is but auxiliary proof which may tend to corroborate evidence of

the objective symptoms [of being under the influence of alcohol].'"  Thurston v. Lynchburg, 15

Va. App. 475, 483, 424 S.E.2d 701, 705-06 (1992) (quoting Brooks v. City of Newport News,

224 Va. 311, 315-16, 295 S.E.2d 801, 804 (1982)).  In this case, there was sufficient evidence of

objective symptoms that would allow a fact finder to conclude that appellant was under the

influence of alcohol:  (1) appellant admitted to consuming twelve to twenty-four beers;

(2) Coderre and two other witnesses smelled a "strong odor" of alcohol when in the appellant's

presence; (3) when asked if he had been drinking, appellant answered yes, "lots and lots and

lots"; and, (4) at the hospital, appellant stated that he was "too f---ed up" and couldn't sign

anything.  Such evidence is enough to support a finding of intoxication, and, therefore, a

violation of Code § 18.2-266 (ii), (iii) or (iv), without the blood test.

### B.  The Court Did Not Err in Admitting the Hospital Toxicology Report

Appellant argues that, because the Commonwealth failed to affirmatively show a reliable

foundation for the hospital toxicology report, it was error for the court to admit it into evidence.

We disagree.

Appellant concedes that Code § 19.2-187.02[10] addresses the hearsay nature of the

hospital records, but contends that it does not overcome or eliminate the requirements that

admission of scientific evidence must be based on a proper foundation.  However, "[w]hether the

foundation is sufficient is a question within the sound discretion of the trial judge.  If the judge

finds the foundation sufficient, the credibility of the witnesses and the weight to be accorded the

---

[10] Code § 19.2-187.02 states that "the written results of blood alcohol tests conducted upon persons receiving medical treatment in a hospital emergency room are admissible in evidence as a business records exception to the hearsay rule in prosecutions" for violations of several named code provisions, including Code § 18.2-36.1, involuntary manslaughter resulting from driving while intoxicated.

evidence are matters within the province of the [fact finder]." Essex v. Commonwealth, 228 Va. 273, 285, 322 S.E.2d 216, 223 (1984). In this case, the trial court did not abuse its discretion in admitting the hospital toxicology report.

Appellant also contends that in spite of the statute allowing admission of hospital blood tests, those tests must also meet the requirements of Code § 18.2-268.5, which relate to the handling of blood samples taken pursuant to the implied consent law. Blood tests performed by medical personnel in a hospital emergency room are not subject to the requirements of Code § 18.2-268.5. That statute applies only to blood drawn under the implied consent law. The statute begins, "[f]or purposes of this article . . . ," which clearly and strictly limits its application only to DUI prosecutions.

C. The Court Did Not Err in Denying Appellant's Proposed Jury Instructions

Appellant argues that the trial court erred by denying three of his proposed jury instructions, "W," "Y," and "Z." He contends that the denial of these instructions prevented him from presenting his theory of the case to the jury. Instruction "W" describes three degrees of negligence: ordinary, willful, and criminal. Instructions "Y" and "Z" raise the issue of whether Watson's death was directly caused by appellant's actions.

"A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" Darnell v. Commonwealth, 6 Va. App. 485, 488, 370 S.E.2d 717, 719 (1988) (quoting Swisher v. Swisher, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982)). When reviewing a trial judge's decision refusing a proffered jury instruction, "'[t]he appropriate standard of review requires that we view the evidence with respect to the refused instruction in the light most favorable to [the proponent of the instruction].'" Hartigan v. Commonwealth, 31 Va. App. 243,

257, 522 S.E.2d 406, 412 (1999) (quoting Boone v. Commonwealth, 14 Va. App. 130, 131, 415 S.E.2d 250, 251 (1992)).

The jury instructions approved by the trial court in this case are the same as those upheld by this Court in Hall, 32 Va. App. 616, 529 S.E.2d 829. In Hall, we noted that these instructions "substantially tracked the language of Code § 18.2-36.1 and the Virginia Model Jury Instructions" and that they "adequately stated the elements of the offense." Id. at 635, 529 S.E.2d at 839. As in Hall, the trial court was justified in approving an instruction that clearly and simply stated the elements of the crime and the findings that were necessary for a conviction.

The trial court did not abuse its discretion in refusing to admit instruction "W," as it would not have clarified any element of the law and could have confused the jury by introducing additional issues not present in the law under which appellant was prosecuted. Instructions "Y" and "Z" were properly refused as another instruction already dealt with the issues of causation. These additional instructions would have been needlessly redundant. "[I]t is not desirable to multiply instructions. Moreover, any instruction that is given should relate to the specific evidence in the case and should not incorrectly state the law or mislead the jury. . . . [T]he trial judge may properly refuse any instructions that are misleading or redundant." Diffendal v. Commonwealth, 8 Va. App. 417, 423, 382 S.E.2d 24, 26-27 (1989) (internal quotations and citations omitted). We hold that the trial court did not abuse its discretion in deciding to refuse the instructions.

### D. The Evidence Was Sufficient As a Matter of Law

When the sufficiency of the evidence is challenged on appeal, "'we presume the judgment of the trial court to be correct' and reverse only if the trial court's decision is 'plainly wrong or without evidence to support it.'" Kelly, 41 Va. App. at 257, 584 S.E.2d at 447 (quoting Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002)); see also McGee

v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (*en banc*). This means the jury's verdict cannot be overturned on appeal unless no "'rational trier of fact'" could have come to the conclusion it did. Kelly, 41 Va. App. at 257, 584 S.E.2d at 447 (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)); see also Seaton v. Commonwealth, 42 Va. App. 739, 746, 595 S.E.2d 9, 13 (2004); Pease v. Commonwealth, 39 Va. App. 342, 355, 573 S.E.2d 272, 278 (2002) (*en banc*) ("We let the decision stand unless we conclude no rational juror could have reached that decision."), aff'd, 226 Va. 397, 588 S.E.2d 149 (2003). A reviewing court does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Jackson, 443 U.S. at 318-19 (emphasis in original and citation omitted). We must instead ask whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Kelly, 41 Va. App. at 257, 584 S.E.2d at 447 (quoting Jackson, 443 U.S. at 319) (emphasis in original and internal quotations omitted); see also Hoambrecker v. City of Lynchburg, 13 Va. App. 511, 514, 412 S.E.2d 729, 731 (1992). "'This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" Kelly, 41 Va. App. at 257-58, 584 S.E.2d at 447 (quoting Jackson, 443 U.S. at 319).

Appellant argues that the evidence presented at trial was insufficient to prove: (1) that he was intoxicated; (2) that he caused Watson's death; and (3) that his conduct was gross, wanton, and culpable. There is sufficient evidence in the record on each of these elements to support the jury's decision to convict.

Appellant first argues that the Commonwealth did not prove he was intoxicated. On the contrary, the hospital toxicology report revealed that appellant's blood alcohol content was .24 or .25, approximately three times the legal limit in Virginia. The Commonwealth presented expert

testimony on the mental and physical effects that normally accompany a blood alcohol content greater than .20. There was evidence that appellant asked after the accident, "What did I hit?," admitted he did not remember the accident, that he consumed between twelve and twenty-four beers, and that after the accident he stated that he was "too f---ed up" and couldn't sign anything. Witnesses also testified that appellant was mumbling, disoriented, and had a strong odor of alcohol about his person. Finally, the Commonwealth presented evidence that there was a lack of skid marks at the scene of the accident, from which the jury could conclude that appellant's driving behavior at the time of the accident was wanton and reckless and was affected by his intoxicated state. Thus, the record contains sufficient evidence for the jury to conclude that appellant was intoxicated.

Appellant next argues that the evidence was insufficient to prove that he caused Watson's death. He contends that the Commonwealth only proved that he struck the vehicle Watson was riding in and that evidence was insufficient to prove that her death was caused by his intoxication. Appellant claims that Childers' testimony was inconsistent and that Childers was at fault because he should have seen and yielded to appellant's vehicle. The Commonwealth presented evidence that Childers' vehicle had the right-of-way and that appellant ran a red light. Childers testified that he had received a green arrow before he began turning his vehicle. The Commonwealth also presented an expert in traffic signals who testified that if Childers received a green arrow, appellant would have faced a red light at the time of the accident. Appellant presented no evidence that would prevent any reasonable juror from believing the testimony of Childers or the expert witness. The lack of skid marks – indicating appellant's failure to stop or slow down before the impact – could also lead the jury to conclude that appellant's failure to notice the other car before striking it caused the accident. Therefore, the record contains

sufficient evidence to allow the jury to conclude that appellant's driving while intoxicated caused Watson's death.

Appellant also argues with regard to causation that Childers' testimony is inconsistent with a finding that he had the right-of-way. Appellant contends that because Childers did not see appellant's car before entering the intersection, he could not have been attentive to the traffic signal. However,

> All of the authorities agree that contributory negligence has no place in a case of involuntary manslaughter [and] if the criminal negligence of the [accused] is found to be the cause of the death, [he] is criminally responsible, whether the decedent's failure to use due care contributed to the injury or not. Bell v. Commonwealth, 170 Va. 597, 616, 195 S.E. 675, 683 (1938).

> Only if the conduct of the deceased amounts to an independent, intervening act alone causing the fatal injury can the accused be exonerated from liability for his or her criminal negligence. Mayo v. Commonwealth, 218 Va. 644, 647, 238 S.E.2d 831, 833 (1977). In such case, the conduct of the accused becomes a remote cause. Delawder v. Commonwealth, 214 Va. 55, 57, 196 S.E.2d 913, 915 (1973).

Hubbard v. Commonwealth, 243 Va. 1, 14, 413 S.E.2d 875, 882 (1992). Therefore, the conduct of another party plays no part in the case, unless that conduct is proven to be an independent, intervening cause, rendering the defendant's negligence so remote it ceases to be a proximate cause of the accident. Appellant did not prove such in this case.

Finally, appellant argues that the evidence was insufficient for the jury to find him guilty of gross, wanton, and culpable conduct. Appellant relies on Jetton v. Commonwealth, 2 Va. App. 557, 561, 347 S.E.2d 141, 144 (1986), in which this Court held that in order to find gross, wanton, and culpable conduct, multiple factors are required other than intoxication to show such conduct. Appellant asserts that the only relevant conduct to be considered is that he ran a red light. He contends that single act is so common an occurrence that it fails to rise to the level of gross, wanton, and culpable conduct.

While aggravated involuntary manslaughter convictions often involve multiple acts exhibiting gross, wanton, and culpable conduct, a single act is sufficient to establish such conduct. In Hall, this Court upheld an aggravated involuntary manslaughter conviction upon facts that are substantially similar to the instant case. Hall, 32 Va. App. at 616, 529 S.E.2d at 829. In that case, the appellant was convicted after his truck collided with a motorcycle, killing the cyclist. Id. at 621, 529 S.E.2d at 832. In Hall, the only conduct attributed to the appellant was having a blood alcohol content greater than .20 and running a red light. This Court ruled that "[t]he Commonwealth's evidence was competent, was not inherently incredible and was sufficient to prove appellant drove his vehicle in a 'gross, wanton and culpable' manner." Id. at 632, 529 S.E.2d at 837.

Neither intoxication nor running a red light alone may be sufficient to establish gross, wanton, and culpable conduct. However, the combination of appellant's extreme intoxication, ignoring traffic signals and running a red light, striking a vehicle without slowing down or braking and asking, "What did I hit?," is sufficient evidence for a jury to find gross, wanton, and culpable conduct.

Accordingly, the record clearly provides sufficient evidence for a jury to conclude that appellant knowingly engaged in conduct "so gross, wanton and culpable as to show a reckless disregard of human life," which proximately caused the accident and resulted in Watson's death.

### III. CONCLUSION

We hold that the trial court did not err in permitting prosecution of the aggravated involuntary manslaughter charge under Code § 18.2-36.1, admitting the hospital toxicology report, or by refusing appellant's proffered jury instructions. We also conclude that the record

- 13 -

includes sufficient evidence for a jury to convict appellant of aggravated involuntary manslaughter.  Therefore, we affirm the judgment of the trial court.

<u>Affirmed.</u>

Benton, J., dissenting.

The Commonwealth indicted Stevens for driving under the influence of alcohol in violation of Code § 18.2-266 and for involuntary manslaughter. The latter offense is statutorily defined, in part, as follows:

> A. Any person who, as a result of driving under the influence in violation of clause (ii), (iii), or (iv) of § 18.2-266 or any local ordinance substantially similar thereto unintentionally causes the death of another person, shall be guilty of involuntary manslaughter.
>
> B. If, in addition, the conduct of the defendant was so gross, wanton and culpable as to show a reckless disregard for human life, he shall be guilty of aggravated involuntary manslaughter, a felony punishable by a term of imprisonment of not less than one nor more than 20 years, one year of which shall be a mandatory minimum term of imprisonment.

Code § 18.2-36.1. This prosecution and conviction under Code § 18.2-36.1 implicated only Code § 18.2-266(ii) because no allegation or evidence concerned any substance other than alcohol.

The trial judge found that the arresting officer failed to comply with the Virginia implied consent law because he did not arrest Stevens within the statutorily mandated period following the accident, see Code § 18.2-268.2, and because he failed to give Stevens a form to request an independent analysis of his blood, see Code § 18.2-268.6. Based upon his findings that the officer violated Code § 18.2-268.6 of the implied consent law and that the conduct of the arresting officer did not constitute substantial compliance with the provisions of Code § 18.2-268.6, the trial judge dismissed the Commonwealth's prosecution of Stevens for violating Code § 18.2-266. In so ruling, the trial judge relied upon our decisions in Artis v. City of Suffolk, 19 Va. App. 168, 450 S.E.2d 165 (1994) (reversing the conviction for failure to provide the accused with a form to make election for independent blood analysis, which "negates the possibility of 'substantial compliance'"), and Shoemaker v. Commonwealth, 18 Va. App. 61,

- 15 -

441 S.E.2d 354 (1994) (holding that the Commonwealth is foreclosed from prosecution upon failure to comply with statutory procedures of Code § 18.2-268.6).

As we noted in Shoemaker, the Supreme Court has explained the necessity of "diligent adherence" to the implied consent law as follows:

> "The provisions of [Code § 18.2-268 *et seq*.] serve a salutary purpose. A chemical analysis of one's blood provides a scientifically accurate method of determining whether a person is intoxicated, removes the question from the field of speculation and supplies the best evidence for that determination. It protects one who has the odor of alcohol on his breath but has not been drinking to excess, and one whose conduct may create the appearance of intoxication when he is suffering from some physical condition over which he has no control."

18 Va. App. at 64-65, 441 S.E.2d at 356 (quoting Walton v. City of Roanoke, 204 Va. 678, 683, 133 S.E.2d 315, 319 (1963)). Thus, we held that dismissal of the prosecution under Code § 18.2-266 is the only adequate remedy for a violation of Code § 18.2-268.6. Shoemaker, 18 Va. App. at 64, 441 S.E.2d at 356. Suppression of the test results does not cure a violation of the implied consent law because "the accused [is deprived] of a significant method of establishing his innocence." Breeden v. Commonwealth, 15 Va. App. 148, 150, 421 S.E.2d 674, 676 (1992). We explained that a mere refusal to admit in evidence the Commonwealth's test results would not compensate for the deprivation of the statutory right in cases where the Commonwealth is permitted to proceed at trial upon the arresting officer's testimony. This is so because "the independent test results could have been exculpatory." Shoemaker, 18 Va. App. at 64, 441 S.E.2d at 356.

I would hold that the reasoning underlying these cases, as well as the express language of Code § 18.2-36.1, mandate the conclusion that the trial judge erred in failing also to dismiss the prosecution of Stevens for a violation of Code § 18.2-36.1. We have unequivocally drawn the dependent connection between a prosecution under Code § 18.2-266 and a prosecution for

- 16 -

aggravated manslaughter under Code § 18.2-36.1.  Our case law could not be clearer on this point.  We held in Hall v. Commonwealth, 32 Va. App. 616, 627, 529 S.E.2d 829, 835 (2000) (*en banc*), that "[t]he manslaughter statute under which appellant was tried expressly references a violation of Code § 18.2-266 as the predicate for the prosecution of aggravated manslaughter," and we further held that "[t]he Commonwealth can prove a violation of Code § 18.2-36.1 if and only if it proves a violation of Code § 18.2-266."  In other words, "a prosecution for a violation of Code § 18.2-36.1 *is necessarily a prosecution under [Code] § 18.2-266.*"  Hall, 32 Va. App. at 616, 529 S.E.2d at 835 (emphasis added).

The express wording of the statute demonstrates that to convict an accused of involuntary vehicular manslaughter, the Commonwealth must prove a violation of Code § 18.2-266 because the manslaughter statute expressly provides that "[a]ny person who, as a result of driving under the influence in violation of clause (ii), (iii), or (iv) of § 18.2-266 . . . unintentionally causes the death of another person, shall be guilty of involuntary manslaughter."  Code § 18.2-36.1(A).  If there could be any doubt about the dependent connection between Code § 18.2-266 and Code § 18.2-36.1, the legislature eliminated that doubt.  The legislative intent is clear:  by enacting "rebuttable presumptions" that arise in any prosecution for a violation of Code § 18.2-36.1 when a blood analysis results from arrests under Code § 18.2-266, the General Assembly codified the dependent connection.  In pertinent part, Code § 18.2-269 provides as follows:

> A.  In any prosecution for a violation of § 18.2-36.1 or § 18.2-266(ii), or any similar ordinance, the amount of alcohol in the blood of the accused at the time of the alleged offense as indicated by a chemical analysis of a sample of the accused's blood or breath to determine the alcohol content of his blood in accordance with the provisions of §§ 18.2-268.1 through 18.2-268.12 shall give rise to the following rebuttable presumptions:
>
> (1)  If there was at that time 0.05 percent or less by weight by volume of alcohol in the accused's blood or 0.05 grams or less per 210 liters of the accused's breath, it shall be presumed that the

- 17 -

accused was not under the influence of alcohol intoxicants at the time of the alleged offense;

(2) If there was at that time in excess of 0.05 percent but less than 0.08 percent by weight by volume of alcohol in the accused's blood or 0.05 grams but less than 0.08 grams per 210 liters of the accused's breath, such facts shall not give rise to any presumption that the accused was or was not under the influence of alcohol intoxicants at the time of the alleged offense, but such facts may be considered with other competent evidence in determining the guilt or innocence of the accused; or

(3) If there was at that time 0.08 percent or more by weight by volume of alcohol in the accused's blood or 0.08 grams or more per 210 liters of the accused's breath, it shall be presumed that the accused was under the influence of alcohol intoxicants at the time of the alleged offense.

Indeed, the connection between the statutes is amply demonstrated in this case by the Commonwealth's use, in this prosecution under Code § 18.2-36.1, of the blood analysis evidence which was derived from blood drawn from Stevens under Code § 18.2-268.2. The Commonwealth used the blood analysis evidence from blood drawn from Stevens under the implied consent law. The Commonwealth's expert testified that the analysis revealed Stevens's blood alcohol content was .12 by weight by volume, which would result in decreased steering accuracy, decreased vision, decreased decision-making ability, and a general loss of coordination. This evidence was critical in establishing that Stevens was intoxicated and that Stevens's conduct met the gross and wanton standard, elevating his crime to aggravated involuntary manslaughter.

Stevens's consent for the taking and testing of his blood was statutorily implied and sanctioned because "he [was] arrested for violation of [Code] § 18.2-266." Code § 18.2-268.2. Furthermore, by denying Stevens's motion to bar the prosecution under Code § 18.2-36.1, the trial judge has permitted the Commonwealth to benefit from its violation of the implied consent law. Because of the violation of the implied consent law following his arrest, Stevens had no

- 18 -

opportunity to obtain an independent analysis of his blood and, therefore, was precluded from any opportunity that might have advantaged him under the rebuttable presumption statute of Code § 18.2-269.  See Shoemaker, 18 Va. App. at 64, 441 S.E.2d at 356 (holding that dismissal was required because "the independent test results could have been exculpatory").  As we held in Breeden, "[o]nce the Commonwealth has elected to have a driver take a blood or breath test pursuant to Code § 18.2-268, the driver has a right to receive the benefits of the test."  15 Va. App. at 150, 421 S.E.2d at 675.

For these reasons, I would reverse the conviction.

Tuesday          23rd

November, 2004.

David Alan Stevens,                                   Appellant,

 against            Record No. 1415-03-4
                     Circuit Court No. CR15055

Commonwealth of Virginia,                             Appellee.

Upon a Petition for Rehearing En Banc

Before Chief Judge Fitzpatrick, Judges Benton, Elder, Annunziata, Bumgardner,<br>Frank, Humphreys, Clements, Felton, Kelsey and McClanahan

On November 2, 2004 came David Alan Stevens the appellant, by court-appointed counsel, and filed a petition praying that the Court set aside the judgment rendered herein on October 19, 2004, and grant a rehearing *en banc* thereof.

On consideration whereof, the petition for rehearing *en banc* is granted, the mandate entered herein on October 19, 2004 is stayed pending the decision of the Court *en banc*, and the appeal is reinstated on the docket of this Court.

The parties shall file briefs in compliance with Rule 5A:35. The appellant shall attach as an addendum to the opening brief upon rehearing *en banc* a copy of the opinion previously rendered by the Court in this matter.  It is further ordered that the appellant shall file with the clerk of this Court twelve additional copies of the appendix previously filed in this case.

A Copy,<br>Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk      

Present:    Chief Judge Fitzpatrick, Judges Benton and McClanahan
Argued by teleconference


DAVID ALAN STEVENS

                                                        OPINION BY
v.        Record No. 1415-03-4            JUDGE ELIZABETH A. McCLANAHAN
                                                        OCTOBER 19, 2004
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Burke F. McCahill, Judge

Bonnie H. Hoffman, Deputy Public Defender (Office of the Public
Defender, on briefs), for appellant.

Eugene Murphy, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellee.


David Alan Stevens appeals his conviction for aggravated involuntary manslaughter in

violation of Code § 18.2-36.1.  He contends that the trial court erred by:  (1) failing to foreclose

prosecution of the aggravated involuntary manslaughter charge on the ground that the

Commonwealth did not comply with the procedural requirements of a driving under the

influence (DUI) charge; (2) failing to exclude a hospital toxicology report based on insufficient

proof of reliability; (3) failing to instruct the jury on criminal negligence; and (4) finding the

evidence sufficient to prove he was guilty of aggravated involuntary manslaughter.  For the

reasons that follow, we affirm the trial court.

I.  Background

On appeal, we review the evidence in the light most favorable to the Commonwealth.

Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003).  That principle

requires us to "'discard the evidence of the accused in conflict with that of the Commonwealth,

and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom.'" Kelly v. Commonwealth, 41 Va. App. 250, 254, 584 S.E.2d 444, 446 (2003) (*en banc*) (quoting Watkins v. Commonwealth, 26 Va. App. 335, 348, 494 S.E.2d 859, 866 (1998)).

So viewed, on June 29, 2002, appellant struck an automobile driven by Barry Childers while Childers was turning left at an intersection. As a result, Heather Watson, a passenger in Childers' vehicle, was killed. Volunteer rescue workers treated appellant at the scene, and appellant told one of them that he had been drinking "lots and lots and lots," and had come from a bar. Appellant was transported to a local hospital emergency room. Appellant's hospital admission records show that appellant stated he had consumed "between 12 -- 24 beers" and "[more than] 18 beers" prior to the accident.

After the accident, the Loudoun County Sheriff's Office dispatched Deputy Chris Coderre to the hospital to arrest appellant. Appellant was waiting to undergo a Computed Axial Tomography scan when Coderre located him. Coderre said he could clearly smell alcohol in the room that appellant was in, the smell being especially obvious in the hospital's sterile environment. After the scan, Coderre spoke to appellant and informed him that he was under arrest for DUI. Coderre read the implied consent law to appellant,[1] explained the procedure, and asked him to submit to a blood test, to which appellant agreed. Coderre watched a hospital lab technician draw two vials of appellant's blood and seal, package, tape and initial them. Once the blood was drawn, Coderre informed appellant of his right to an independent analysis of the blood sample, asked him if he wished to have it done, and, if so, to sign the form authorizing the test.

---

[1] Code § 18.2-268.2, the implied consent law, provides that any person operating a motor vehicle on a highway in the Commonwealth is deemed, as a condition of operating the vehicle, to have consented to have samples of his or her blood or breath taken and tested for purposes of determining its alcohol and/or drug content.

Coderre offered appellant the form and his pen, upon which appellant stated, "I'm too f---ed up. I can't sign sh--." Coderre kept the form with a vial of appellant's blood and took it with him when he left the hospital. The form and blood sample remained locked in the trunk of Coderre's police cruiser until the following Monday when Coderre submitted it to the Department of Forensic Sciences for testing. An analysis of this blood sample showed appellant's blood alcohol content was .21. The hospital's blood toxicology report indicated that appellant's blood alcohol content was .24 or .25. On July 1, 2002, the Commonwealth charged appellant with driving under the influence, pursuant to Code § 18.2-266, and aggravated involuntary manslaughter, pursuant to Code § 18.2-36.1.

At a pretrial hearing, the trial court suppressed the implied consent blood sample analysis and precluded the Commonwealth from using the presumption of intoxication pursuant to Code § 18.2-269. The trial court based its ruling on a finding that the Commonwealth had failed to arrest appellant within the statutorily mandated period after the incident as required by Code § 18.2-268.2.[2] The court also ruled that appellant had not properly been provided the form requesting independent analysis of the blood sample. The court therefore dismissed prosecution of charges under Code § 18.2-266 (DUI) but allowed the Commonwealth to proceed with prosecution under Code § 18.2-36.1 (aggravated involuntary manslaughter). After a jury trial, appellant was convicted of aggravated involuntary manslaughter and sentenced to fifteen years in prison.

---

[2] At the time of the incident, pursuant to Code § 18.2-268.2, consent was implied if the arrest was made within two hours of the alleged offense. In 2002, the General Assembly amended that statute to allow implied consent if the arrest was made within three hours of the alleged offense.

II.  Analysis

A.  The Trial Court Did Not Err by Allowing Prosecution under Code § 18.2-36.1

Appellant asserts, relying on Hall v. Commonwealth, 32 Va. App. 616, 627, 529 S.E.2d 829, 835 (2000), that a prosecution for aggravated involuntary manslaughter under Code § 18.2-36.1 is inherently a prosecution for DUI under Code § 18.2-266 and, therefore, the Commonwealth must comply with all of the code provisions related to a prosecution for DUI.  In Hall, this Court stated,

> The manslaughter statute under which appellant was tried expressly references a violation of Code § 18.2-266 as the predicate for prosecution of aggravated manslaughter.  By the express wording of the statute, a prosecution for a violation of Code § 18.2-36.1 is necessarily a "prosecution under [Code] § 18.2-266."  Code § 18.2-267(E).  The Commonwealth can prove a violation of Code § 18.2-36.1 if and only if it proves a violation of Code § 18.2-266.  Thus, we hold that Code § 18.2-267(E) applies to bar introduction of the results of the preliminary analysis because a prosecution under Code § 18.2-36.1 includes as an element of the offense proof of violation of Code § 18.2-266.

Hall, 32 Va. App. at 627, 529 S.E.2d at 835.  Based on that holding, appellant contends that the trial court should have dismissed the aggravated manslaughter charge under Code § 18.2-36.1 on the ground that the Commonwealth did not comply with the procedural requirements of Code § 18.2-268.6, a provision concerning the transmission of blood samples.

An involuntary manslaughter conviction under Code § 18.2-36.1 requires a finding that the defendant was driving under the influence of either alcohol or drugs or a combination of alcohol and drugs, as specified in clauses (ii), (iii) and (iv) of Code § 18.2-266.  Code of Virginia, Title 18.2, Chapter 7, Article 2 governs the prosecution of driving a motor vehicle while intoxicated, and includes Code § 18.2-266 as well as Code §§ 18.2-268.1 through -268.11, which provide the steps for conducting breath and blood tests as related to the implied consent law.

- 4 -

At the time of appellant's arrest, Code § 18.2-268.2(B) provided that "[a]ny person so arrested for a violation of [Code] § 18.2-266 (i) or (ii) or both, or [Code] § 18.2-266.1 . . . shall submit to a breath test. If the breath test is unavailable or the person is physically unable to submit to the breath test, a blood test shall be given." Code § 18.2-268.6 required that when a blood sample was drawn, the arresting officer must give the accused a form setting forth the procedures for obtaining an independent analysis of the blood sample.[3] Code § 18.2-268.11 provides that the steps for conducting the breath and blood tests are procedural and require only substantial compliance. Appellant argues that the procedures are mandatory in an arrest under Code § 18.2-36.1, that the accused must receive the independent analysis form, and because he did not receive the form, the charge should have been dismissed. We disagree for the following reasons.

While it is true that <u>Hall</u> stands for the proposition that a prosecution under Code § 18.2-36.1 is necessarily a prosecution under Code § 18.2-266, the application of the rule in <u>Hall</u> is much narrower than appellant argues. In <u>Hall</u>, the Court held that preliminary analysis of a breath test was inadmissible in an aggravated manslaughter prosecution under Code § 18.2-36.1, because the breath test results in that case were introduced to prove a violation of Code § 18.2-266, which is not permissible under Code § 18.2-267(E). The holding in <u>Hall</u> is limited to Code § 18.2-267, a statute that, among other provisions, prohibits admitting into evidence preliminary test results that are used to determine whether an arrest should be made for a violation of Code § 18.2-266. On the other hand, Code § 18.2-36.1 specifically predicates prosecution under that statute upon a violation of either clause (ii), (iii) or (iv) of Code

---

[3] In 2003, the General Assembly amended Code § 18.2-268.6 to eliminate the provision requiring the arresting officer to give the accused a form setting forth the procedures for obtaining an independent analysis of the blood sample. <u>See</u> Va. Acts, chs. 933, 936. Stevens was charged before the amendment took effect, and, therefore, the amendment does not apply in this case.

§ 18.2-266. In addition, the implied consent law and related statutes are invoked post-arrest, when a violation of DUI has already been charged, and prescribe procedures for taking and testing blood samples. In fact, as the trial court stated, and as we point out below, if the Commonwealth had decided to charge appellant under "[Code] § 18.2-36.1 alone, he would not be able to insist upon the independent analysis test afforded him under Code § 18.2-268.6."

Results from a blood test are not necessary or required for a prosecution under Code § 18.2-266 (ii), (iii), or (iv), and, thus, are not required for prosecution under Code § 18.2-36.1. See Oliver v. Commonwealth, 40 Va. App. 20, 24, 577 S.E.2d 514, 516 (2003) ("Test results from a breath or blood test are not necessary or required to prove driving under the influence of alcohol or drugs."). Only clause (i) of Code § 18.2-266, "the per se statute predicating guilt on blood alcohol content alone," requires blood test results. Cutright v. Commonwealth, 43 Va. App. 593, 598, 601 S.E.2d 1, ___ (2004) (internal quotation marks and citation omitted). Code § 18.2-36.1 does not require that the Commonwealth establish a violation of clause (i) of Code § 18.2-266; it only requires that a violation of clauses (ii), (iii) or (iv) be shown. If the General Assembly intended to require a blood test for prosecution for involuntary manslaughter, it would have tied that involuntary manslaughter statute to clause (i) and not just clauses (ii), (iii) and (iv). Thus, "'the result of a [blood] analysis is but auxiliary proof which may tend to corroborate evidence of the objective symptoms [of being under the influence of alcohol].'" Thurston v. Lynchburg, 15 Va. App. 475, 483, 424 S.E.2d 701, 705-06 (1992) (quoting Brooks v. City of Newport News, 224 Va. 311, 316, 295 S.E 2d 801, 804 (1982)). The jury properly convicted appellant on all the other evidence showing he was intoxicated, including appellant's own admissions, without any blood test results.

The evidence in this case showed that appellant admitted to consuming twelve to twenty-four beers and that Coderre and two other witnesses smelled a "strong odor" of alcohol

when in the appellant's presence. When asked if he had been drinking, appellant answered yes, "lots and lots and lots." At the hospital, appellant stated that he was "too f---ed up" and couldn't sign anything. Such evidence, which we also discuss below, is enough to support a finding of intoxication and therefore a violation under Code § 18.2-266 (ii) (iii) or (iv), without the blood test. A blood test is not required to prove intoxication for prosecution under clauses (ii), (iii) or (iv) of Code § 18.2-266, and, by extension, is, therefore, not required for prosecution under Code § 18.2-36.1.

Neither Code § 18.2-268.6, the implied consent law, nor any of the other statutes related to the implied consent law refer to Code § 18.2-36.1. Code §§ 18.2-268.2, -268.3, -268.4, -268.5, -268.8, -268.9 and -268.10 specifically state that they apply to violations of Code §§ 18.2-266 or -266.1 or (except -268.9) "a similar ordinance,"[4] but do not mention Code § 18.2-36.1.[5] In addition to allowing prosecution for refusal to submit to a blood test under Code §§ 18.2-266 and -266.1, Code § 18.2-268.3 also specifies that a prosecution for refusal to submit to a blood test is available under a prosecution for maiming a person as a result of driving while intoxicated pursuant to Code § 18.2-51.4. It is important to note that Code § 18.2-51.4 is the equivalent of Code § 18.2-36.1(B), except that it applies in cases of "serious bodily injury of another person resulting in permanent and significant physical impairment" instead of death. Had the General Assembly intended to have the implied consent law and its related statutory

---

[4] We note that the legislature used the word "ordinance" and not "statute," removing any argument that Code § 18.2-36.1 is included under that language. Code § 18.2-268.12 authorizes counties, cities and towns to adopt ordinances that parallel the implied consent law and its related provisions.

[5] Code § 18.2-268.1 is a definitional statute, Code § 18.2-268.6 refers back to Code § 18.2-268.5, Code § 18.2-268.7 refers back to Code § 18.2-268.6, and Code § 18.2-268.11 refers back to Code §§ 18.2-268.2 to -268.9 and, therefore, do not need to recite the statutes to which they apply. In 2004, the General Assembly added Code § 18.2-272 to most of the statutes cited above; see Va. Acts, ch. 1013.

provisions apply to Code § 18.2-36.1, it would have specifically included it in the language of those statutes; however, it did not. See Cummings v. Fulghum, 261 Va. 73, 77, 540 S.E.2d 494, 496 (2001) ("When the [plain] language in a statute is clear and unambiguous, we are bound by the plain meaning of that language."). Therefore, its omission makes it apparent that the legislature intended to exclude it from those procedural hurdles.

Appellant argues, based on Artis v. City of Suffolk, 19 Va. App. 168, 450 S.E.2d 165 (1994), and Shoemaker v. Commonwealth, 18 Va. App. 61, 441 S.E.2d 354 (1994), that the officer's failure to ensure that appellant took delivery of the form is fatal to his conviction and, thus, requires dismissal of the aggravated manslaughter charge. Artis held that merely showing a form to the accused is insufficient to comply with the requirement that the form be given to the accused and, therefore, requires dismissal of the DUI charge. Artis, 19 Va. App. at 170-71, 450 S.E.2d 166-67. Shoemaker held that failure to substantially comply with Code § 18.2-268.6 required dismissal of the DUI charge on the rationale that independent test results could have provided the accused with exculpatory evidence. Shoemaker, 18 Va. App. at 64, 441 S.E.2d at 356. However, in both of those cases, the defendant was charged with DUI under Code § 18.2-266. Neither of those cases have anything to do with a prosecution for involuntary manslaughter under Code § 18.2-36.1, the statute at issue in the instant case.[6]

Appellant also relies on Hall. As discussed above, the Hall holding does not apply to the facts of this case and, therefore, does not compel a dismissal of appellant's aggravated involuntary manslaughter charge. The remedy for a finding that there was not substantial compliance with the provisions related to the implied consent law is dismissal of the DUI charge.

---

[6] We also note that in this case, unlike in Artis, the appellant refused to take the form. When Coderre offered the form to appellant he refused it saying, "I'm too f---ed up. I can't sign sh--." In Artis, the Court specifically declined to apply its holding to such a situation, saving that question for another day. Artis, 19 Va. App. at 171, 450 S.E.2d at 166.

- 8 -

That was the result in <u>Artis</u> and <u>Shoemaker</u> and that was the result in this case: appellant's DUI

charge was dismissed. The trial court did not err in refusing to dismiss the aggravated

involuntary manslaughter charge.

B. The Court Did Not Err in Admitting the Hospital Toxicology Report

Appellant argues that, because the Commonwealth failed to affirmatively show a reliable

foundation for the hospital toxicology report, it was error for the court to admit it into evidence.

We disagree.

Appellant concedes that Code § 19.2-187.02[7] addresses the hearsay nature of the hospital

records, but that it does not overcome or eliminate the requirements for admission of scientific

evidence on a proper foundation. <u>See</u> <u>Essex v. Commonwealth</u>, 228 Va. 273, 322 S.E.2d 216

(1984). He contends that in spite of the statute allowing admission of hospital blood tests, those

tests must also meet the requirements of Code § 18.2-268.5, which relate to the handling of

blood samples taken pursuant to the implied consent law.

Blood tests performed by medical personnel in a hospital emergency room are not subject

to the requirements of Code § 18.2-268.5. That statute applies only to blood drawn under the

implied consent law. The statute begins, "[f]or purposes of this article . . . ," which clearly and

strictly limits its application only to DUI prosecutions.

Code § 19.2-187.02 allows the records to be admitted into evidence under the business

records exception to the hearsay rule.

> [The] business records exception to the hearsay rule . . . allows
> introduction "into evidence of verified regular [business] entries
> without requiring proof from the original observers or record
> keepers." <u>Neeley v. Johnson</u>, 215 Va. 565, 571, 211 S.E.2d 100,

---

[7] Code § 19.2-187.02 states that "the written results of blood alcohol tests conducted
upon persons receiving medical treatment in a hospital emergency room are admissible in
evidence as a business records exception to the hearsay rule in prosecutions" for violations of
several named code provisions, including Code § 18.2-36.1, involuntary manslaughter resulting
from driving while intoxicated.

106 (1975). . . . "Admission of such evidence is conditioned . . . on proof that the document comes from the proper custodian and that it is a record kept in the ordinary course of business made contemporaneously with the event by persons having the duty to keep a true record."  "Automatic" Sprinkler [Corp. of America v. Coley & Peterson, Inc., 219 Va. 781, 793, 250 S.E.2d 765, 773 (1979)] . . . .

Sparks v. Commonwealth, 24 Va. App. 279, 282, 482 S.E.2d 69, 70 (1997).  The toxicology report was shown to be a business record, recorded in the regular course of hospital business, contemporaneously made, and authenticated by its authorized custodian.  This is a sufficient foundation for the admissibility of the hospital blood test as a business record.  Therefore, the trial court did not abuse its discretion in admitting the hospital toxicology report under the "business records" exception to the hearsay rule, as evidence of the truth of its content.

C.  The Court Did Not Err in Denying Appellant's Proposed Jury Instructions

Appellant argues that the trial court erred by denying three of his proposed jury instructions, "W," "Y," and "Z."  He contends that the denial of these instructions prevented him from presenting his theory of the case to the jury.  Instruction "W" describes three degrees of negligence:  ordinary, willful, and criminal.  Instructions "Y" and "Z" raise the issue of whether Watson's death was directly caused by appellant's actions.

"A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'"  Darnell v. Commonwealth, 6 Va. App. 485, 488, 370 S.E.2d 717, 719 (1988) (quoting Swisher v. Swisher, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982)).  When reviewing a trial judge's decision refusing a proffered jury instruction, "'the appropriate standard of review requires that we view the evidence with respect to the refused instruction in the light most favorable to [the proponent of the instruction].'"  Hartigan v. Commonwealth, 31 Va. App. 243,

- 10 -

257, 522 S.E.2d 406, 412 (1999) (quoting Boone v. Commonwealth, 14 Va. App. 130, 131, 415 S.E.2d 250, 251 (1992)).

The jury instructions approved by the trial court in this case are the same as those upheld by this Court in Hall. In Hall, we noted that these instructions "substantially tracked the language of Code § 18.2-36.1 and the Virginia Model Jury Instructions" and that they "adequately stated the elements of the offense." Hall, 32 Va. App. at 635, 529 S.E.2d at 839. As in Hall, the trial court was justified in approving an instruction that clearly and simply stated the elements of the crime and the findings that were necessary for a conviction.

The trial court did not abuse its discretion in refusing to admit Instruction "W," as it would not have clarified any element of the law and could have confused the jury by introducing additional issues not present in the law under which appellant was prosecuted. Instructions "Y" and "Z" were properly refused as another instruction already dealt with the issues of causation. These additional instructions would have been needlessly redundant. "It is not desirable to multiply instructions. Moreover, any instruction that is given should relate to the specific evidence in the case and should not incorrectly state the law or mislead the jury. . . . [T]he trial judge may properly refuse any instructions that are misleading or redundant." Diffendal v. Commonwealth, 8 Va. App. 417, 423, 382 S.E.2d 24, 26-27 (1989) (internal quotations marks and citations omitted). We hold that trial court did not abuse its discretion in deciding to refuse the instructions.

### D. The Evidence Was Sufficient As a Matter of Law

When the sufficiency of the evidence is challenged on appeal, we "'presume the judgment of the trial court to be correct'" and reverse only if the trial court's decision is "'plainly wrong or without evidence to support it.'" Kelly, 41 Va. App. at 257, 584 S.E.2d at 447 (quoting Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002)); see also McGee

v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (*en banc*).  This means the jury's verdict cannot be overturned on appeal unless no "'rational trier of fact'" could have come to the conclusion it did.  Kelly, 41 Va. App. at 257, 584 S.E.2d at 447 (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)); Seaton v. Commonwealth, 42 Va. App. 739, 746, 595 S.E.2d 9, 13 (2004); Pease v. Commonwealth, 39 Va. App. 342, 355, 573 S.E.2d 272, 278 (2002) (*en banc*) ("We let the decision stand unless we conclude no rational juror could have reached that decision."), aff'd, 226 Va. 397, 588 S.E.2d 149 (2003).  A reviewing court does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  Jackson, 443 U.S. at 318-19 (emphasis in original and citation omitted).  We must instead ask whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Kelly, 41 Va. App. at 257, 584 S.E.2d at 447 (quoting Jackson, 443 U.S. at 319) (emphasis in original and internal quotation marks omitted)); see also Hoambrecker v. City of Lynchburg, 13 Va. App. 511, 514, 412 S.E.2d 729, 731 (1992).  "'This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'"  Kelly, 41 Va. App. at 257-58, 584 S.E.2d at 447 (quoting Jackson, 443 U.S. at 319).

Appellant argues that the evidence presented at trial was insufficient to prove:  (1) that he was intoxicated; (2) that he caused Watson's death; and (3) that his conduct was gross, wanton and culpable.  There is sufficient evidence in the record on each of these elements to support the jury's decision to convict.

Appellant first argues that the Commonwealth did not prove he was intoxicated.  On the contrary, the hospital toxicology report revealed that appellant's blood alcohol content was .24 or .25, approximately three times the legal limit in Virginia.  The Commonwealth presented expert

testimony on the mental and physical effects that normally accompany a blood alcohol content greater than .20. There was evidence that appellant asked after the accident, "What did I hit?," admitted he did not remember the accident, that he consumed between twelve and twenty-four beers, and that after the accident he stated that he was "too f---ed up" and couldn't sign anything. Witnesses also testified that appellant was mumbling, disoriented, and had a strong odor of alcohol about his person. Finally, the Commonwealth presented evidence that there was a lack of skid marks at the scene of the accident, from which the jury could conclude that appellant's driving behavior at the time of the accident was out of the ordinary and was affected by his intoxicated state. Thus, the record contains sufficient evidence for the jury to conclude that appellant was intoxicated.

Appellant next argues that the evidence was insufficient to prove that he caused Watson's death. He contends that the Commonwealth only proved that he struck the vehicle Watson was riding in, and that evidence was insufficient to prove that her death was caused by his intoxication. Appellant claims that Childers' testimony was inconsistent and that Childers was at fault because he should have seen and yielded to appellant's vehicle. The Commonwealth presented evidence that Childers' vehicle had the right-of-way and that appellant ran a red light. Childers testified that he had received a green arrow before he began turning his vehicle. The Commonwealth also presented an expert in traffic signals who testified that if Childers received a green arrow, appellant would have faced a red light at the time of the accident. Appellant presented no evidence that would prevent any reasonable juror from believing the testimony of Childers or the expert witness. The lack of skid marks – indicating appellant's failure to stop or slow down before the impact – could also lead the jury to conclude that appellant's failure to notice the other car before striking it caused the accident. Therefore, the record contains

sufficient evidence to allow the jury to conclude that appellant's driving while intoxicated caused Watson's death.

Appellant also argues with regard to causation that Childers' testimony is inconsistent with a finding that he had the right-of-way. Appellant contends that because Childers did not see appellant's car before entering the intersection, he could not have been attentive to the traffic signal. However,

> All of the authorities agree contributory negligence has no place in a case of involuntary manslaughter [and] if the criminal negligence of the [accused] is found to be the cause of the death, [he] is criminally responsible, whether the decedent's failure to use due care contributed to the injury or not.
> Bell v. Commonwealth, 170 Va. 597, 616, 195 S.E.2d 675, 683 (1938).
>
> Only if the conduct of the deceased amounts to an independent, intervening act alone causing the fatal injury can the accused be exonerated from liability for his or her criminal negligence. Mayo v. Commonwealth, 218 Va. 644, 647, 238 S.E.2d 831, 833 (1977). In such case, the conduct of the accused becomes a remote cause. Delawander v. Commonwealth, 214 Va. 55, 57, 196 S.E.2d 913, 915 (1973).

Hubbard v. Commonwealth, 243 Va. 1, 14, 413 S.E.2d 875, 882 (1992). Therefore, the conduct of another party plays no part in the case, unless that conduct is proven to be an independent, intervening cause, rendering the defendant's negligence so remote it ceases to be a proximate cause of the accident. Appellant did not prove such in this case.

Finally, appellant argues that the evidence was insufficient for the jury to find him guilty of gross, wanton and culpable conduct. Appellant relies on Jetton v. Commonwealth, 2 Va. App. 557, 561, 347 S.E.2d 141, 144 (1986), in which this Court stated that in order to find gross, wanton and culpable conduct there must be multiple factors other than intoxication to show such conduct. Appellant asserts that the only relevant conduct to be considered is that he ran a red

light.  He contends that single act is so common an occurrence that it fails to rise to the level of gross, wanton and culpable conduct.

While involuntary manslaughter convictions often involve multiple acts exhibiting gross, wanton and culpable conduct, a single act is sufficient to establish such conduct.  In Hall, this Court upheld an involuntary manslaughter conviction upon facts that are substantially similar to the instant case.  In Hall, the appellant was convicted after his truck collided with a motorcycle, killing the cyclist.  32 Va. App. at 621, 529 S.E.2d at 832.  In that case, the only conduct attributed to the appellant was having a blood alcohol content greater than .20 and running a red light.  This Court ruled that "[t]he Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove appellant drove his vehicle in a 'gross, wanton and culpable' manner."  Id. at 632, 529 S.E.2d at 837.

Neither intoxication nor running a red light alone may be sufficient to establish gross, wanton, and culpable conduct.  However, the combination of appellant's extreme intoxication, ignoring traffic signals and running a red light, striking a vehicle without slowing down or braking and asking, "What did I hit?," is sufficient evidence for a jury to find gross, wanton and culpable conduct.

Accordingly, the record clearly provides sufficient evidence for a jury to conclude that appellant knowingly engaged in conduct "so gross, wanton and culpable as to show a reckless disregard of human life," which proximately caused the accident and resulted in Watson's death.

### III.  Conclusion

We hold that the trial court did not err in permitting prosecution of the aggravated involuntary manslaughter charge under Code § 18.2-36.1, admitting the hospital toxicology report, or by refusing appellant's proffered jury instructions.  We also conclude that the record

includes sufficient evidence for a jury to convict appellant of aggravated involuntary manslaughter. Therefore, we affirm the judgment of the trial court.

<u>Affirmed.</u>

Benton, J., dissenting.

The Commonwealth indicted Stevens for driving under the influence of alcohol in violation of Code § 18.2-266 and for involuntary manslaughter. The latter offense is statutorily defined, in part, as follows:

> A. Any person who, as a result of driving under the influence in violation of clause (ii), (iii), or (iv) of § 18.2-266 or any local ordinance substantially similar thereto unintentionally causes the death of another person, shall be guilty of involuntary manslaughter.
>
> B. If, in addition, the conduct of the defendant was so gross, wanton and culpable as to show a reckless disregard for human life, he shall be guilty of aggravated involuntary manslaughter, a felony punishable by a term of imprisonment of not less than one nor more than 20 years, one year of which shall be a mandatory minimum term of imprisonment.

Code § 18.2-36.1. This prosecution and conviction under Code § 18.2-36.1 implicated only Code § 18.2-266(ii) because no allegation or evidence concerned any substance other than alcohol.

The trial judge found that the arresting officer failed to comply with the Virginia implied consent law because he did not arrest Stevens within the statutorily mandated period following the accident, see Code § 18.2-268.2, and because he failed to give Stevens a form to request an independent analysis of his blood, see Code § 18.2-268.6. Based upon his findings that the officer violated Code § 18.2-268.6 of the implied consent law and that the conduct of the arresting officer did not constitute substantial compliance with the provisions of Code § 18.2-268.6, the trial judge dismissed the Commonwealth's prosecution of Stevens for violating Code § 18.2-266. In so ruling, the trial judge relied upon our decisions in Artis v. City of Suffolk, 19 Va. App. 168, 450 S.E.2d 165 (1994), and Shoemaker v. Commonwealth, 18 Va. App. 61, 441 S.E.2d 354 (1994).

- 17 -

As we noted in Shoemaker, the Supreme Court has explained the necessity of "diligent adherence" to the implied consent law as follows:

> "The provisions of [Code § 18.2-268 *et seq*.] serve a salutary purpose. A chemical analysis of one's blood provides a scientifically accurate method of determining whether a person is intoxicated, removes the question from the field of speculation and supplies the best evidence for that determination. It protects one who has the odor of alcohol on his breath but has not been drinking to excess, and one whose conduct may create the appearance of intoxication when he is suffering from some physical condition over which he has no control."

18 Va. App. at 64-65, 441 S.E.2d at 356 (quoting Walton v. City of Roanoke, 204 Va. 678, 683, 133 S.E.2d 315, 319 (1963)). Thus, we held that dismissal of the prosecution under Code § 18.2-266 is the only adequate remedy for a violation of Code § 18.2-268.6. Shoemaker, 18 Va. App. at 64, 441 S.E.2d at 356. See also Breeden v. Commonwealth, 15 Va. App. 148, 150, 421 S.E.2d 674, 676 (1992) (holding that suppression of the test results does not cure a violation of the implied consent law that "deprives the accused of a significant method of establishing his innocence"). We explained that a mere refusal to admit in evidence the Commonwealth's test results would not compensate for the deprivation of the statutory right in cases where the Commonwealth is permitted to proceed at trial upon the arresting officer's testimony. This is so because "the independent test results could have been exculpatory." Shoemaker, 18 Va. App. at 64, 441 S.E.2d at 356.

I would hold that the reasoning underlying these cases, as well as the express language of Code § 18.2-36.1, mandate the conclusion that the trial judge erred in failing also to dismiss the prosecution of Stevens for a violation of Code § 18.2-36.1. We have unequivocally drawn the dependent connection between a prosecution under Code § 18.2-266 and a prosecution for aggravated manslaughter under Code § 18.2-36.1. Our case law could not be clearer on this point. We held in Hall v. Commonwealth, 32 Va. App. 616, 627, 529 S.E.2d 829, 835 (2000),

that "[t]he manslaughter statute under which appellant was tried expressly references a violation of Code § 18.2-266 as the predicate for the prosecution of aggravated manslaughter," and we further held that "[t]he Commonwealth can prove a violation of Code § 18.2-36.1 if and only if it proves a violation of Code § 18.2-266." In other words, "a prosecution for a violation of Code § 18.2-36.1 *is necessarily a prosecution under [Code] § 18.2-266*." Hall, 32 Va. App. at 616, 529 S.E.2d at 835 (emphasis added).

The express wording of the statute demonstrates that to convict an accused of involuntary vehicular manslaughter, the Commonwealth must prove a violation of Code § 18.2-266 because the manslaughter statute expressly provides that "[a]ny person who, as a result of driving under the influence in violation of clause (ii), (iii), or (iv) of § 18.2-266 . . . unintentionally causes the death of another person, shall be guilty of involuntary manslaughter." Code § 18.2-36.1(A). If there could be any doubt about the dependent connection between Code § 18.2-266 and Code § 18.2-36.1, the legislature eliminated that doubt. The legislative intent is clear: by enacting "rebuttable presumptions" that arise in any prosecution for a violation of Code § 18.2-36.1 when a blood analysis results from arrests under Code § 18.2-266, the General Assembly codified the dependent connection. In pertinent part, Code § 18.2-269 provides as follows:

> B. In any prosecution for a violation of § 18.2-36.1 or § 18.2-266(ii), or any similar ordinance, the amount of alcohol in the blood of the accused at the time of the alleged offense as indicated by a chemical analysis of a sample of the accused's blood or breath to determine the alcohol content of his blood in accordance with the provisions of §§ 18.2-268.1 through 18.2-268.12 shall give rise to the following rebuttable presumptions:
>
> (1) If there was at that time 0.05 percent or less by weight by volume of alcohol in the accused's blood or 0.05 grams or less per 210 liters of the accused's breath, it shall be presumed that the accused was not under the influence of alcohol intoxicants at the time of the alleged offense;

- 19 -

(2)  If there was at that time in excess of 0.05 percent but less than 0.08 percent by weight by volume of alcohol in the accused's blood or 0.05 grams but less than 0.08 grams per 210 liters of the accused's breath, such facts shall not give rise to any presumption that the accused was or was not under the influence of alcohol intoxicants at the time of the alleged offense, but such facts may be considered with other competent evidence in determining the guilt or innocence of the accused; or

(3)  If there was at that time 0.08 percent or more by weight by volume of alcohol in the accused's blood or 0.08 grams or more per 210 liters of the accused's breath, it shall be presumed that the accused was under the influence of alcohol intoxicants at the time of the alleged offense.

Indeed, the connection between the statutes is amply demonstrated in this case by the Commonwealth's use, in this prosecution under Code § 18.2-36.1, of the blood analysis evidence which was derived from blood drawn from Stevens under Code § 18.2-268.2.  The Commonwealth used the blood analysis evidence from blood drawn from Stevens under the implied consent law.  The Commonwealth's expert testified that the analysis revealed Stevens's blood alcohol content was .12 by weight by volume and that this result would result in decreased steering accuracy, decreased vision, decreased decision-making ability, and a general loss of coordination.  This evidence was critical in establishing that Stevens was intoxicated and that Stevens's conduct met the gross and wanton standard, elevating his sentence to aggravated involuntary manslaughter.

Stevens's consent for the taking and testing of his blood was statutorily implied and sanctioned because "he [was] arrested for violation of [Code] § 18.2-266."  Code § 18.2-268.2.  Furthermore, by denying Stevens's motion to bar the prosecution under Code § 18.2-36.1, the trial judge has permitted the Commonwealth to benefit from its violation of the implied consent law.  Because of the violation of the implied consent law following his arrest, Stevens had no opportunity to obtain an independent analysis of his blood and, therefore, was precluded from any opportunity that might have advantaged him under the rebuttable presumption statute of

Code § 18.2-269.  See Shoemaker, 18 Va. App. at 64, 441 S.E.2d at 356 (holding that dismissal was required because "the independent test results could have been exculpatory").  As we held in Breeden, "[o]nce the Commonwealth has elected to have a driver take a blood or breath test pursuant to Code § 18.2-268, the driver has a right to receive the benefits of the test."  15 Va. App. at 150, 421 S.E.2d at 675.

For these reasons, I would reverse the conviction.